Robert W. LAWRENCE and Rita J. Lawrence, Plaintiffs–Appellants,

v.

COMPREHENSIVE BUSINESS SERVIC-ES COMPANY and Comprehensive Accounting Corporation, Defendants–Appellees.

No. 87–2229.

United States Court of Appeals, Fifth Circuit.

Dec. 15, 1987.

Patrick J. Dyer, Wilshire & Scott, Houston, Tex., for plaintiffs-appellants.

Lester L. Hewitt, Steve Rosenblatt, Albert B. Kimball, Jr., Pravel, Gambrell, Hewitt & Kimball, Houston, Tex., for defendants-appellees.

Before CLARK, Chief Judge, GEE and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Robert and Rita Lawrence appeal an order staying litigation and compelling arbitration pursuant to an arbitration provision in a franchise agreement between the Lawrences and Comprehensive Business Services Co. The Lawrences contend that the agreement violates Texas law. They argue that the legality of the agreement is not a proper subject of arbitration and that an arbitration provision cannot be used to circumvent state law. In addition, the Lawrences argue that the arbitration provision is unenforceable because Comprehensive's obligation to arbitrate was illusory; that even if the arbitration provision has some effect, it does not govern the issue of illegality; and that Comprehensive waived arbitration by filing a separate suit against Lawrence and by indicating that it did not consider itself bound by the arbitration clause. Because these considerations cannot overcome the strong federal interest in encouraging arbitration, we affirm the district court's order compelling arbitration.

## I.

Comprehensive franchises accounting and bookkeeping practices nationally. In February 1981, Comprehensive entered into a franchise agreement with Robert Lawrence, a Texas certified public accountant, licensing Lawrence to use the trade name Comprehensive Business Services. The agreement required Lawrence to purchase Comprehensive forms, stationery, and computer hardware and software, and to use his best efforts to promote its business. The agreement also required Lawrence to make periodic royalty payments and to pay periodic fees to Comprehensive's national advertising fund.

After the agreement had been executed, Lawrence learned that the Texas State Board of Public Accountancy had taken disciplinary action against other Comprehensive franchisees for operating an accounting practice under a trade name. After Comprehensive attempted unsuccessfully to receive a favorable ruling from the Texas State Board, Lawrence stopped using the trade name. He advised Comprehensive that he could not continue under the agreement because if he did, he might lose his license.

In December 1984, when the parties were unable to resolve their differences, Comprehensive sued Lawrence in Illinois small claims court for approximately $5,000 it claimed Lawrence owed it for services it provided. Comprehensive eventually obtained a judgment, which Lawrence paid. The Lawrences in turn sued Comprehensive in Texas state court, seeking a judgment declaring the agreement illegal and unenforceable and freeing them from any further liability under it. Comprehensive removed the suit to the United States District Court for the Southern District of Texas and moved to stay the litigation and compel arbitration pursuant to the arbitration clause in the agreement. The arbitration clause provided in relevant part:

> *Mandatory and Binding Arbitration.* In the event a dispute cannot be resolved amicably, the parties mutually recognize and agree that it will be to their best interests that their differences be resolved with a minimum of time and money being expended commensurate with a due process hearing. To this end the parties agree that they will not file any lawsuits or claims against each other (except an action by [Comprehensive] for possession of the accounts) without first submitting their grievances to mandatory and binding arbitration. Any controversy arising out of, or relating to, this agreement or any modification or extension thereof, including any claim for damages or rescission, or both, shall be settled by arbitration ... in accordance with the rules, regulations and precepts then obtaining of the American Arbitration Association (AAA) in connection with commercial arbitration.
>
> .     .     .     .     .
>
> The parties recognize that certain disputes (for example those involving public interest, public policy or other similar laws) may not be arbitrable without the subsequent express consent of the parties. As to these disputes the parties

agree to either consent to submit them to arbitration by the same terms and conditions that are arbitrable by prior agreement, or if they refuse to so consent, to immediately submit them to court for an early disposition so as not to delay arbitration proceedings on other matters in controversy and as an aid to a fair, final, economic, and expeditious arbitration hearing.

After a hearing, the district court granted Comprehensive's motion to compel arbitration, and the Lawrences appeal.

## II.

■ The Lawrences contend that the agreement violates the Texas Public Accountancy Act of 1979[1] and that ordering arbitration pursuant to an arbitration clause in an illegal contract is improper. The Supreme Court rejected a similar argument in *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,*[2] holding that a claim of fraud in the inducement of the entire contract was itself subject to arbitration pursuant to the arbitration provision in the contract. The Court explained:

> Under § 4 [of the Federal Arbitration Act], with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that "the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue." Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.[3]

---

1. Vernon's Texas Civ.Stat.Ann. art. 41a–1, §§ 1–30 (Supp.1987).

2. 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

3. 388 U.S. at 403–04, 87 S.Ct. at 1806.

The Lawrences seek to distinguish *Prima Paint*, arguing that because the alleged illegality "pervades the entire contract" and because the illegal provision "is so basic and so interwoven with the other contract terms, the agreement must stand or fall as an entirety." But the fraud in the inducement alleged in *Prima Paint* was just as pervasive as the illegality asserted in this case. Just as in *Prima Paint*, the Lawrences do not challenge the legality of the arbitration provision itself, but the legality of the entire contract. This court has applied *Prima Paint* to hold an arbitration clause enforceable in spite of a claim that the gas sales contract containing it was void from its inception because of the parties' failure to comply with a state statute regulating the sale of the state's gas.[4] We regard this case as indistinguishable.

The Lawrences argue that to permit arbitration of this suit "is in essence for the court to effectuate an illegal agreement." But their argument presumes that the contract is illegal and that presenting the dispute to the arbitrator somehow effectuates an illegal contract. The flaw in the argument is that the legality of the contract has not yet been decided.

The Lawrences also argue that unlike a claim of fraud in the inducement, which is predicated on the existence of alleged facts that induced the agreement, the illegality argument before us involves "the purely legal application of a statutory proscription to the contract." But the Lawrences do not contend that the agreement did not allow the arbitrator to decide purely legal questions. Because the Lawrences do not attack the arbitration agreement itself, *Prima Paint* requires that their claim of illegality be arbitrated pursuant to the contract.

■ Finally, the Lawrences suggest that enforcing the arbitration provision of

an illegal contract would contravene Texas law and is therefore improper. This argument forgets that the arbitrability of an issue under the Federal Arbitration Act is a matter of federal law.[5] To the extent the Lawrences argue under § 2 of the Federal Arbitration Act that arbitration is prohibited because illegality is a ground which exists "at law or in equity for the revocation of any contract," the Supreme Court rejected the same argument in *Southland Corp. v. Keating.*[6] In that case, the Court held that the California Franchise Investment Law, which required judicial adjudication of disputes, was not a ground that "exist[ed] at law or equity for the revocation of any contract." Rather, the law was a ground for revocation only of arbitration provisions in contracts subject to that law.[7] Similarly, the Texas Public Accountancy Act of 1979 is not a ground that exists at law or in equity for the revocation of any contract, and it cannot overcome the strong federal interest in arbitration.

### III.

■ The Lawrences next attack the arbitration clause directly. Citing the Eleventh Circuit's decision in *Hull v. Norcom, Inc.,*[8] they argue that the arbitration provision is unenforceable because it is not mutually binding—that Comprehensive's obligation to arbitrate is illusory. They note that the franchise agreement provides Comprehensive a right to seek injunctions in courts and contains a liquidated damages clause, a non-competition clause, and a cumulative remedies clause. The Lawrences contend that the presence of these provisions shows that the arbitration provision was not mutually binding.

In *Hull*, a former employee sued Norcom, Inc., seeking damages and a declaration that the contract was invalid because Norcom fraudulently induced him to enter into the contract. Norcom moved to com-

---

4. *Mesa Operating Limited Partnership v. Louisiana Intrastate Gas Corp.,* 797 F.2d 238, 244 (5th Cir.1986).

5. *See Southland Corp. v. Keating,* 465 U.S. 1, 10–13, 104 S.Ct. 852, 858–59, 79 L.Ed.2d 1 (1984).

6. 465 U.S. at 16 n. 11, 104 S.Ct. at 861 n. 11.

7. *Id.*

8. 750 F.2d 1547 (11th Cir.1985).

pel arbitration pursuant to the contract, but the district court permanently enjoined Norcom from compelling Hull to arbitrate.

The Eleventh Circuit affirmed, concluding that although the arbitration provision compelled both parties to submit all disputes to arbitration, Norcom's obligation to arbitrate was in fact illusory.[9] The court explained that another contract provision

> grants Norcom a unilateral right to a judicial forum "in the event of the breach by Hull of the terms and conditions of this agreement," and authorizes Norcom "to obtain damages for any breach of this agreement, or to enforce the specific performance thereof by Hull." . . . . [T]he provisions in this case stand separately, independent, and inconsistent. As a result, the mutual obligation to arbitrate is effectively abrogated.[10]

Unlike those involved in *Hull,* none of the provisions that the Lawrences cite provides Comprehensive a right to a judicial forum "for any breach of the agreement"; nor do these provisions provide Comprehensive with the remedies of damages or specific performance at its pleasure. The provisions that the Lawrences cite are far more limited, and reading them in the light of the strong federal policy in favor of arbitration,[11] we are persuaded that the arbitration provision is enforceable.

The Lawrences contend that Comprehensive's obligation to arbitrate is rendered illusory by the injunction paragraph, which provides:

> *Remedy of Injunction.* In the event [Lawrence] materially breaches the terms of this Agreement, [Comprehensive] may elect to revoke any franchises granted herein, and apply to a court of competent jurisdiction for an injunction in appropriate cases.

This argument has no merit. The Second Circuit rejected a similar claim in *Erving v.*

*Virginia Squires Basketball Club.*[12] The court there explained the purpose of such an injunction provision: "[I]n a proper case . . . the only way to preserve the *status quo* during the pendency of the arbitration proceeding is by the granting of injunctive relief."[13] Moreover, as the Seventh Circuit has explained, the "right to seek injunctive relief in court and [the] right to arbitrate are not incompatible."[14] The injunction provision here is expressly limited to "appropriate cases," and it authorizes only injunctive relief. We therefore find unpersuasive the Lawrences' suggestion that this injunction provision has the same impact as the provision in *Hull* broadly providing a judicial forum in the event of any breach.

The Lawrences also assert that Comprehensive's obligation to arbitrate is nullified by the Agreement Not to Compete paragraph. This clause provides no support for the Lawrences' position, for it does not say that Comprehensive may seek relief in court for disputes involving the Agreement Not to Compete. In fact, the provision makes no mention of remedies. Similarly, the Liquidated Damages clause and the Cumulative Remedies clause, which the Lawrences cite as nullifying Comprehensive's arbitration obligations, do not provide that Comprehensive shall have the right to go to court to resolve disputes. These clauses do not provide any remedy, much less a remedy inconsistent with arbitration. Assuming that breach of any of these clauses would in an appropriate case allow Comprehensive to seek an injunction under the injunction clause, such a limited right once again does not prove the Comprehensive's obligation to arbitrate is illusory.

Finally, the Lawrences point to the Conditions for Revocation of Franchise, which allow Comprehensive to revoke the

**9.** 750 F.2d at 1550.

**10.** *Id.*

**11.** *See Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

**12.** 468 F.2d 1064, 1067 (2d Cir.1972).

**13.** *Id.*

**14.** *Sauer–Getriebe KG v. White Hydraulics, Inc.,* 715 F.2d 348, 350 (7th Cir.1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984).

franchise under certain conditions, as undermining the arbitration provision. But these conditions do not restrict the nature of disputes subject to arbitration. Indeed, termination or revocation of an agreement does not affect the enforceability of the arbitration clause within that agreement.[15] Whatever inequalities exist could only establish non-mutuality of obligation in the contract as a whole, not in the arbitration clause. And *Prima Paint* requires that disputes concerning the contract, as opposed to the making of the arbitration clause, be referred to the arbitrator.

## IV.

■ The Lawrences argue that the arbitration provision does not encompass their claim of illegality. They contend that the arbitration provision expressly excludes claims such as the illegality of the agreement and that in any event, the parties did not intend to arbitrate such a claim. The Lawrences note that the arbitration provision states in part:

> The parties recognize that certain disputes (for example those involving public interest, public policy or other similar laws) may not be arbitrable without the subsequent express consent of the parties.

Lawrence suggests that this language exempts from arbitration its claim of illegality under the Accountancy Act. However, Comprehensive explains that the language contemplates situations in which Illinois common law might apply to the exclusion of Illinois statutes regulating arbitration.[16] Under Illinois common law, agreements to arbitrate future disputes are contrary to public policy and void.[17]

We are persuaded that Comprehensive's reading is reasonable and that the Lawrences' argument gives insufficient weight to the strong federal policy in favor of arbitration. As the Supreme Court explained in *Moses H. Cone Memorial Hospital:*

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability.[18]

That Comprehensive included the paragraph because it was wary of Illinois common law does not foreclose arbitration of the present dispute under the Federal Arbitration Act.

The Lawrences' contention that the parties did not intend the arbitration to encompass disputes such as the present one ignores the teaching of *Moses H. Cone Memorial Hospital.* We must resolve any doubts in favor of arbitration. Since the arbitration clause provides for arbitration of "[a]ny controversy arising out of, or relating to, this agreement," and since Comprehensive's interpretation of the public policy exception to arbitration is reasonable, we are persuaded that the arbitration provision governs this case.

## V.

The Lawrences contend that Comprehensive waived arbitration because Comprehensive sued the Lawrences in an earlier action on this agreement and because Comprehensive's representative stated that the arbitration clause did not bind the company.

■ Waiver of arbitration is not a favored finding, and there is a presumption against it.[19] In *Miller Brewing Co. v. Fort Worth Distributing Co.,* this court stated:

> Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or

---

**15.** *See Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402, 410 (2d Cir.1959), *cert. dismissed,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

**16.** *See Hill v. Mercury Record Corp.,* 168 N.E.2d 461, 26 Ill.App.2d 350 (1960).

**17.** *See Levy v. American Automobile Ins. Co.,* 175 N.E.2d 607, 31 Ill.App.2d 157 (1961).

**18.** 460 U.S. at 24–25, 103 S.Ct. at 941 (footnote omitted).

**19.** *Miller Brewing Co. v. Fort Worth Distributing Co.,* 781 F.2d 494, 496 (5th Cir.1986).

prejudice of the other party. "The right to arbitration, like any other contract right, can be waived. A party waives his right to arbitrate when he actively participates in a law suit or takes other action inconsistent with that right."[20]

We are not persuaded that Comprehensive substantially invoked the judicial process to the Lawrences' detriment. Regardless of whether the earlier suit was arbitrated or litigated, Lawrence is the party seeking declaratory judgment here. The Lawrences do not suggest that Comprehensive delayed requesting arbitration of this action. Nor do they show that the earlier suit prejudiced their present claim. Finally, that a representative of Comprehensive told the Lawrences that Comprehensive was not bound by the arbitration provision does not constitute *action* inconsistent with arbitration. Accordingly, we reject the Lawrences' waiver claim.

### VI.

Contrary to Comprehensive's suggestion, the Lawrences' appeal was not frivolous. For the reasons given, however, the district court's order staying litigation and compelling arbitration is AFFIRMED.

---

**20.** *Id.* (quoting *Cornell & Co. v. Barber & Ross Co.,* 360 F.2d 512, 513 (D.C.Cir.1966)) (footnote omitted).