**REALCO ENTERPRISES,
INC., Plaintiff,**

v.

**MERRILL LYNCH, PIERCE, FENNER
& SMITH INCORPORATED,
Defendant.**

**Civ. A. No. 289–154.**

United States District Court,
S.D. Georgia,
Brunswick Division.

May 16, 1990.

**516**

Beth B. Mason–O'Neal, Brunswick, Ga., for plaintiff.

Paul W. Stivers, Atlanta, Ga., for defendant.

### ORDER

ALAIMO, District Judge.

Plaintiff, Realco Enterprises, Inc. ("Realco"), brings the instant action alleging that the defendant securities brokerage company mishandled plaintiff's account, in violation of both federal securities statutes and the common law of Georgia. The case is currently before the Court on the defendant's motion to compel arbitration and dismiss the complaint. For reasons expressed below, this motion will be granted in part.

FACTS [1]

In May of 1986, Realco entered into a written securities brokerage agreement with the St. Augustine, Florida, office of defendant, Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch"). Charles Freeman, an employee of Merrill Lynch's St. Augustine office, was the broker in charge of Realco's account. The brokerage agreement authorized Merrill Lynch to buy and sell stock options on plaintiff's behalf, and contained the following clause:

> Except to the extent that controversies involving claims arising under the Federal Securities Laws may be litigated, any controversy between us arising out of such option transactions or this agreement shall be settled by arbitration only before the National Association of Secu-

rities Dealers, Incorporated, or the New York Stock Exchange....

Sometime early in the fall of 1987, Merrill Lynch transferred Freeman to its Utah office. On October 6, 1987, Realco telephoned Freeman and requested that he continue to handle the investment of Realco's account, despite his transfer to Utah. Freeman agreed to continue acting as Realco's broker, but informed Realco that it would be required to execute a brokerage agreement with the Utah office.

During the period of October 7 to October 19, 1987, Merrill Lynch's Utah office bought and sold a number of stock options on Realco's behalf. On October 30, Realco signed a brokerage agreement with the Utah office of Merrill Lynch. This agreement included an arbitration clause identical to the one contained in Realco's agreement with the St. Augustine office.

In July of 1988, Merrill Lynch filed suit against Realco in the state court of Utah, alleging that Realco had refused to pay a $30,000 debit in its brokerage account. Without answering on the merits, Realco moved to dismiss the action for lack of personal jurisdiction. On December 15, 1988, the Utah court granted Realco's motion and dismissed the case. At no time during the pendency of that action did Merrill Lynch attempt to refer the dispute to arbitration.

Realco filed the instant action in this Court in October of 1989, alleging that Merrill Lynch committed fraud and negligence in connection with its handling of the options transactions of October 7 through 19, 1987. Realco seeks relief under both federal securities statutes and the common law of Georgia. Merrill Lynch now moves the Court to dismiss the complaint and compel arbitration of the dispute. Realco responds by arguing that the challenged transactions occurred during a "window period" after the expiration of the St. Augustine agreement and before the commencement of the Utah agreement and, therefore, that no arbitration clause was in force at the relevant time. Realco argues, in the alternative, that Merrill Lynch, by institut-

---

**1.** The Court recites only those facts that are    relevant to the instant motion.

ing the Utah litigation, has waived its right to arbitrate disputes arising out of the brokerage agreement. The Court considers each of these arguments in turn.

DISCUSSION

■ In contracts involving interstate commerce, the validity of arbitration clauses is a matter of federal law governed exclusively by the Federal Arbitration Act of 1925, 9 U.S.C. § 1 *et seq. Ruby–Collins, Inc. v. City of Huntsville*, 748 F.2d 573, 575 (11th Cir.1984). This act provides that contractual arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the Act directs the courts to enforce arbitration clauses by "stay[ing] the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

■ It is evident that the contract at issue in this case "involves interstate commerce." Realco, a Georgia corporation, entered into a stock brokerage agreement with the Florida and Utah offices of Merrill Lynch, a Delaware corporation, for the trading of stock options in New York and elsewhere. Indeed, this may be the *paradigm* of an interstate business transaction. The threshold requirement for application of the Arbitration Act is, therefore, clearly satisfied here.

The three issues remaining for consideration are: (1) Whether the state-law claims asserted by Realco fall within the scope of the arbitration clauses contained in either of the agreements between Realco and Merrill Lynch; (2) if so, whether Merrill Lynch has nevertheless waived its right to arbitrate these claims; and (3) whether the federal securities law claims asserted in Realco's amended complaint are subject to arbitration under the parties' agreement.

**2.** *See also* § 2 of the Arbitration Act, 9 U.S.C. § 2, which recognizes that parties may enter

## I. *State–Law Claims*

### (A) Scope of the Arbitration Clauses

■ Realco argues that the options transactions which are the basis of this lawsuit occurred during a "window period" after the expiration of the St. Augustine agreement and before the commencement of the Utah agreement and that, therefore, no arbitration clause was in effect during the relevant time. This position is without merit.

The Eleventh Circuit Court considered, and declined to accept, a similar argument in *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023 (11th Cir.1982). In that case, the plaintiff argued that the certain acts complained of occurred prior to the execution of the contract containing the arbitration clause and that, for this reason, the claim was not subject to arbitration. Rejecting the plaintiff's argument, the court reasoned as follows:

> By its own terms the [arbitration clause] covers not only disputes arising out of the agreement, but in the disjunctive includes "any controversy between us arising *out of your business.*" An arbitration clause covering disputes arising out of the contract *or* business between the parties evinces a clear intent to cover more than just those matters set forth in the contract.

*Id.* at 1028 (emphasis in original). Similarly, the arbitration clause in the instant case provides in the disjunctive that "any controversy between us arising out of ... options transactions or this agreement shall be settled by arbitration...." Like the provision in *Belke*, this arbitration clause is not limited to disputes arising out of the agreement. Rather, the plain language of the clause subjects to arbitration "any controversy between us *arising out of options transactions*" (emphasis added). Therefore, it is entirely irrelevant that the options transactions challenged by plaintiff occurred prior to the execution of the arbitration agreement with the Utah office.[2] Since the instant controversy "aris[es] out of options transactions" be-

into an agreement to arbitrate an *"existing* controversy" (emphasis added).

tween the parties, Realco's state law claims are subject to arbitration unless the defendant has waived its right to arbitrate.

(B) Waiver

■ Section 3 of the Arbitration Act directs the courts to grant a stay of the litigation of any arbitrable issues "providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. If an applicant is "in default in proceeding with ... arbitration," he will be deemed to have *waived* his right to arbitrate the dispute:

> The right to arbitration, like any other contract right, can be waived. A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right. Once having waived the right to arbitrate, that party is necessarily "in default in proceeding with such arbitration" [within the meaning of 9 U.S.C. § 3].

*Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512 (D.C.Cir.1966). A party will not be held to have waived its right to arbitration absent a showing that it has "substantially invoke[d] the judicial process to the detriment or prejudice of the other party." *Miller Brewing Co. v. Fort Worth Distributing Co.*, 781 F.2d 494, 497 (5th Cir.1986). *See also Smith v. Pay-Fone Systems, Inc.*, 627 F.Supp. 121, 124 (N.D.Ga.1985) (The party asserting waiver must show *both* that his opponent "substantially invoked the litigation machinery" and that he suffered "substantial prejudice.").

Given the strong federal policy in favor of arbitration, a waiver of that right is not easily shown:

> Federal law evinces a clear preference for arbitration over litigation for private dispute resolution. Arbitration provides a speedier and less costly method of dispute resolution than does litigation, while relieving congested federal court dockets. Because federal law favors arbitration, any party arguing waiver of arbitration bears a heavy burden of proof.

*Belke v. Merrill Lynch, Pierce, Fenner & Smith, supra,* at 1025 (citations omitted). *See also Mitsubishi Motors Corp. v. Soler*

*Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."); *Lawrence v. Comprehensive Business Services Co.*, 833 F.2d 1159, 1164 (5th Cir.1987) ("Waiver of arbitration is not a favored finding, and there is a presumption against it.") (footnote omitted).

■ Realco argues that Merrill Lynch waived its right to arbitration by bringing suit against Realco in Utah state court to collect a debit allegedly owing on its brokerage account. Intuitively, one would think that the act of filing suit is in itself a "substantial invocation of the litigation process," thus constituting a waiver of the right to arbitration. The great weight of the authority, however, is to the contrary. In *Lawrence, supra,* plaintiffs Robert and Rita Lawrence brought suit seeking a declaratory judgment that the contract between the parties was illegal and unenforceable. The defendant moved to compel arbitration pursuant to an arbitration clause in the subject contract. The Lawrences responded by arguing that Comprehensive had waived its right to arbitration because Comprehensive previously brought suit—and indeed obtained a $5,000 judgment—against the Lawrences for breach of the same contract. *Id.* at 1164. The Court of Appeals for the Fifth Circuit ruled that Comprehensive's institution of the previous lawsuit did *not* act as a waiver of its right to insist on arbitration of the later action:

> We are not persuaded that Comprehensive substantially invoked the judicial process to the Lawrences' detriment. Regardless of whether the earlier suit was arbitrated or litigated, Lawrence is the party seeking declaratory judgment here. The Lawrences do not suggest that Comprehensive delayed requesting arbitration of *this* action. Nor do they show that the earlier suit prejudiced their *present* claim.

*Id.* at 1165 (emphasis added).

Other courts considering this question have held likewise. *See, e.g., Merrill*

*Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos,* 553 F.2d 842, 845 (2d Cir.1977) ("[T]he filing of an action in a district court is not a waiver of the right to arbitrate, at least not before the defendant has answered on the merits...."); *Drexel Burnham Lambert, Inc. v. Warner,* 665 F.Supp. 1549, 1554 (S.D.Fla.1987) ("[Plaintiff] has failed sufficiently to [demonstrate] that Warner's initiation and prosecution of the state court lawsuit constituted substantial invocation of the judicial process and resulted in such prejudice to [plaintiff] that Warner's right to arbitrate was thereby waived."); *Masthead Mac Drilling Corp. v. Fleck,* 549 F.Supp. 854, 856 (S.D.N.Y. 1982) ("The commencement of litigation in a judicial forum does not, by itself, constitute a waiver of [the contractual right to arbitration]."); *Marlin Oil Corp. v. Colorado Interstate Gas Co.,* 700 F.Supp. 1076, 1080 (W.K.Ok.1988) ("[W]ithout more, an applicant's institution of a lawsuit on an arbitrable issue ... does not establish waiver."); *Ank Shipping Co. v. Seychelles National Commodity Co.,* 596 F.Supp. 1455, 1458 (S.D.N.Y.1984) ("The more recent cases considering a contractual right to arbitration under federal arbitration law hold that even a voluntary commencement of litigation in a judicial forum does not, by itself, constitute a waiver of that right.").

Realco claims that it was prejudiced by the expense and inconvenience of having to defend itself in a Utah court. Although Realco undoubtedly incurred expense and inconvenience in connection with the Utah suit, it has introduced no evidence whatsoever to indicate that its rights in connection with *the instant suit* have been compromised. "In any event the Court is not convinced that merely defending a lawsuit to the point of a motion to dismiss for lack of personal jurisdiction is the type of substantial prejudice necessary to find a waiver, especially in light of the federal policy favoring arbitration." *Smith v. Pay–Fone Systems, Inc., supra,* at 125. The Court is constrained to follow the above authorities and find that Merrill Lynch has not waived its right to arbitration.

## II.  *Federal Law Claims*

In its amended complaint, Realco alleges that Merrill Lynch violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. These provisions generally prohibit the employment of fraudulent devices in connection with the purchase or sale of securities.

The arbitration clauses contained in the Utah and St. Augustine agreements require the parties to arbitrate all disputes between them "[e]xcept to the extent that controversies involving claims arising under the Federal Securities Laws may be litigated." In their numerous briefs to date, the parties have made no mention of this limiting phrase, though it is difficult to imagine how its obvious relevance to the instant dispute might have escaped counsels' notice.

Apparently, this contractual language is a remnant from the days when courts refused to enforce agreements that required arbitration of federal securities law claims. *See, e.g., Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). Recently, however, the Supreme Court has rejected *Wilko* and has clearly announced that federal securities law claims *are* subject to contractual arbitration agreements. *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

Although the law now permits contractual agreements requiring arbitration of federal securities law claims, it is not the Court's function to reform Merrill Lynch's contract in order to extend its arbitration rights to the limit currently permitted by law. *See Van Ness Townhouses v. Mar Industries Corp.,* 862 F.2d 754 (9th Cir. 1988) (refusing to compel arbitration of federal securities law claims where contract contained clause similar to the instant one, despite recent change in the law); *Church v. Gruntal & Co., Inc.,* 698 F.Supp. 465 (S.D.N.Y.1988) (same).

[T]he parties' intentions control and "nothing ... prevents a party from excluding statutory claims from the scope of an agreement to arbitrate...." Be-

cause the parties did not actually agree to arbitrate their [federal] securities claims, the policy favoring arbitration does not, by itself, [permit a court to compel arbitration of those claims].

*Van Ness Townhouses, supra,* at 757 (ellipses in original) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., supra,* 473 U.S. at 628, 105 S.Ct. at 3355). The Supreme Court issued its decision in *McMahon* on June 8, 1987, and the instant parties did not enter into the Utah agreement until October 30, 1987. Merrill Lynch, therefore, had five months to revise its form contracts to take advantage of the change in the law, but did not do so. "[Defendant] drafted the contract and [defendant] included the term. Plaintiff now has the right to require [defendant] to abide by that agreement." *Church, supra,* at 469. Accordingly, Merrill Lynch may not compel arbitration of Realco's federal law claims.

■ The Court now reaches what is perhaps the most unfortunate aspect of this case. Since some of plaintiff's claims are arbitrable and some are not, what is to be done? Until recently, this Circuit has applied the "intertwining" doctrine in circumstances such as this. Under this view, if arbitrable and non-arbitrable claims arose out of the same transaction and were legally and factually intertwined, a court should deny arbitration and try all the claims together in federal court. *See, e.g., Belke v. Merrill Lynch, Pierce, Fenner & Smith, supra.* This approach was thought to promote judicial efficiency by avoiding the prospect of a bifurcated, perhaps redundant, litigation of the same issues in two separate forums.

The intertwining doctrine has since been rejected by the Supreme Court, however. *See Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The plaintiff in *Byrd* brought suit under both the Securities Exchange Act of 1934 and various state-law provisions. The district court held that the state-law claims were arbitrable but assumed that the fed-

eral claims were not. Applying the intertwining doctrine, the district court denied arbitration of the state-law claims and kept all of the counts together for trial. *Id.* 470 U.S. at 214–15, 105 S.Ct. at 1239–40. The Supreme Court's opinion did not challenge the assumption that federal securities claims are not arbitrable,[3] and considered only the application of the intertwining doctrine. Writing for a unanimous Court, Justice Marshall reasoned as follows:

[T]he Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums. Accordingly, we reverse the decision not to compel arbitration [of the state-law claims].... [T]he [Arbitration Act's] mandate—to enforce arbitration agreements—holds true [even] where, as here, such a course would result in bifurcated proceedings if the arbitration agreement is enforced.

*Id.* at 217–218, 105 S.Ct. at 1240–41 (footnote omitted). The mandate of *Byrd* is clear: Realco's arbitrable state-law claims must be severed from the non-arbitrable federal claims and referred to arbitration in accordance with the terms of the parties' agreement. Although the Court takes no pleasure in reaching this untoward result, it is constrained to enforce the terms of the contract for which the parties themselves have bargained.

CONCLUSION

Realco's state-law claims "arise out of options transactions" between itself and Merrill Lynch and fall within the plain language of the parties' arbitration agreement. Since Merrill Lynch has not waived its right to arbitrate the state-law claims, this much of the litigation must be referred to arbitration. Realco's federal securities law claims are not subject to arbitration, however, since the agreement between the parties specifically authorizes Realco to litigate such claims. Accordingly, it is hereby

---

**3.** *Id.* at 215 n. 1, 105 S.Ct. at 1240 n. 1. Of course, the Supreme Court later resolved this

question in *McMahon.* *See supra* p. 519.

ORDERED that Counts 1, 2 and 3 of the complaint be severed from this litigation and referred to arbitration. Count 4, being premised on federal securities law, must remain before the Court for judicial resolution.

SO ORDERED.