**TIMBERTON GOLF, L.P., a Mississippi Limited Partnership, Plaintiff,**

v.

**McCUMBER CONSTRUCTION, INC. and McCumber Golf, Inc., d/b/a Mark McCumber and Associates, Defendants.**

**Civ. A. No. H92–0035(R).**

United States District Court, S.D. Mississippi, S.D.

April 3, 1992.

---

Mark D. Hebert, Ott, Purdy & Scott, Jackson, Miss., for plaintiff.

Ray McNamara, McNamara, Kelly & Welsh, Jackson, Miss., for defendants.

## MEMORANDUM ORDER

DAN M. RUSSELL, Jr., District Judge.

This cause is before this Court on Motion of Timberton Golf, L.P. (hereinafter "Timberton") for Preliminary Injunction, for Consolidation, and for Abstention, and on the Cross–Motion of McCumber Construction, Inc. and McCumber Golf, Inc. (hereinafter "McCumber") to compel arbitration and dismiss Timberton's cause of action.

### Facts and Proceedings

Timberton is a Mississippi limited partnership having its principal place of business in Forrest County, Mississippi. McCumber consists of McCumber Construction, Inc. and McCumber Golf, Inc., d/b/a Mark McCumber and Associates (hereinafter "McCumber and Associates"). Both McCumber Construction and McCumber and Associates are Florida corporations with their principal place of business in Orange Park, Florida.

Timberton is the owner/developer of Timberton Golf Club in Hattiesburg, Mississippi, which involved the development of a residential community containing residential lots and a golf course.

In furtherance of the development of the golf club, Timberton, and/or its predecessor in interest, entered into discussions with McCumber for the purpose of contracting with McCumber and Associates for design and consulting services and with McCumber Construction to implement the design.

Notwithstanding Timberton's argument that the alleged contracts are void, purported agreements were entered into:

1) between McCumber and Associates and Timberton's predecessor in interest, Timber Realty Corp., evidenced by correspondence of September 2, 1988 and March 6, 1989; and

2) between McCumber Construction and Timberton on or about September 12, 1989.

Of the two alleged agreements, only the September 12, 1989 instrument provides for arbitration.

The parties appear to have treated the purported agreements and subsequent amendments as valid for the better part of two years.

On October 8, 1991, based upon allegations of Timberton's failure to pay for work performed under the contract, as well as additional work arising therefrom, McCumber Construction, relying upon provision 10.8 of the main contract, filed a demand for arbitration.

Initially, Timberton treated the alleged contracts as valid even to the extent of, in addition to its response and counterclaim against McCumber Construction, filing a claim against McCumber and Associates. By McCumber Construction's amendment to its demand and response to counterclaim of November 22, 1991, which, in part, added the claim of McCumber and Associates, said associates agreed to arbitration notwithstanding its understanding that no pre-

vious agreement to arbitrate existed between that party and Timberton.

Upon discovery, Timberton ascertained that neither McCumber and Associates, nor J. Christopher Commins, McCumber and Associates' principal in charge of the Timberton project, were licensed to practice landscape architecture in the State of Mississippi. It was also discovered that McCumber Construction had not obtained a certificate of responsibility in the State of Mississippi as required by Miss.Code Ann. Sections 31–3–15 and 31–3–21 (1972, as amended).

On or about January 22, 1992, based upon the foregoing discovery, Timberton filed its objection to the demand for arbitration, amended response to demand, and amended counterclaim in the arbitration proceedings.

Also, on or about January 23, 1992, Timberton filed its complaint in the Circuit Court of Forrest County, Mississippi, seeking declaratory and injunctive relief and assessment of statutory penalty.

After removal of the proceedings to this Court, McCumber, on or about February 18, 1992, filed their answer, defenses and counterclaim against Timberton.

While proceedings were being initiated, which led to removal to this Court on or about January 22, 1992, the American Arbitration Association advised the parties that it had set the matter for a hearing on March 16, 1992.

The motions at bar were filed by Timberton and McCumber on February 27 and 28 of 1992, respectively, and a hearing was had on the motions on March 5, 1992. The parties at that hearing related to this Court that the March 16, 1992 arbitration hearing had been postponed. The hearing has been subsequently rescheduled for May 26, 1992.

### Discussion

█ The primary issue before this Court is the effect, if any, of the failure of McCumber Construction to obtain a certificate of responsibility upon the enforceability of the arbitration clause; assuming, arguendo, that the violation of the statute potentially renders the underlying contract void ab initio.

Also at issue is the broader question of whether the construction of the particular statutes pose such a problem of inconsistent and inconclusive interpretation that this Court should abstain until such time as the State court addresses the issues.

### I.

Miss.Code Ann. Section 31–3–15 (1972) sets out:

> No contract for public or private projects shall be issued or awarded to any contractor who did not have a current certificate of responsibility issued by said board at the time of the submission of the bid, or a similar certificate issued by a similar board of another state which recognizes certificates issued by said board. Any contract issued or awarded in violation of this section shall be null and void.

It is further set out in Section 31–3–21, in pertinent part:

> It shall be unlawful for any person who does not hold a certificate of responsibility issued under this chapter, or a similar certificate issued by another state recognizing such certificate issued by the State of Mississippi, to submit a bid, enter into a contract, or otherwise engage in or continue in this state in the business of a contractor, as defined by this chapter.

The argument of Timberton concedes the premise that otherwise arguably valid and comprehensive arbitration clauses are separable from the underlying contract, and thus effective, if said contract is merely potentially voidable. If however, argues Timberton, the contract is subject to being found to be void ab initio, then likewise the arbitration agreement is subject to being found to be void since it is a part of the contract.

The argument of Timberton on this issue is characterized as bordering on the frivolous by McCumber, and while this Court would not so characterize it, it nevertheless does find McCumber's argument persuasive.

Notwithstanding McCumber's citation to *Robert Lawrence Company v. Devonshire Fabrics, Inc.*, 271 F.2d 402 (2nd Cir.1959), as authority, in part, for the principle that federal courts have consistently treated arbitration clauses as separate and independent of the underlying contract, this Court deems the proper point of beginning to be *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

In summary, the court in *Prima Paint* addressed the issue of "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators." *Id.* at 402, 87 S.Ct. at 1805.

After noting the conflict which existed on this issue in the courts of appeal, the *Prima Paint* court, referring to the United States Arbitration Act of 1925, succinctly reasoned:

> With respect to cases brought in federal court involving maritime contracts or those evidencing transactions in "commerce," we think that Congress has provided an explicit answer. That answer is to be found in Section 4 of the Act, which provides a remedy to a party seeking to compel compliance with an arbitration agreement. Under Section 4, with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that "the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue."

*Id.* at 403, 87 S.Ct. at 1806.

The court then proceeded to find that this mandate applied irrespective of a claim of fraud in the inducement of the contract generally.

As noted previously, this Court does not take lightly Timberton's attempt to distinguish *Prima Paint* from the case sub judice. But for the relatively recent treatment of this issue by the United States Court of Appeals for the Fifth Circuit, the plaintiff's argument for a limitation of *Prima Paint*

not to include arguably void contracts quite possibly would have altered this Court's opinion, if not its holding.

The first case from this circuit cited by McCumber as authority for its argument for compelling arbitration is *Mesa Operating Limited Partnership v. Louisiana Intrastate Gas Corporation*, 797 F.2d 238 (5th Cir.1986).

Coincidentally, in *Mesa* the contract is said to have been performed satisfactorily to both sides for about two years before the defendant, LIG, upon being called to arbitrate, alleged, in avoidance, that the contract in general was void ab initio.

In its discussion of the applicability of the federal law of arbitration to the issue of validity ab initio, the *Mesa* court set out as follows:

> LIG alleges that the state Mineral Board, from which Mesa leased the production site, and Mesa had together failed to comply with La.Rev.Stat. 30:142 (West 1974), which required that the contract to sell the state's gas to be approved by certain state officials or that public bid procedures be followed. LIG contends that this failure made the contract between LIG and Mesa void as never having been entered into. LIG further argues that this issue could not, therefore, have arisen under the contract and was, therefore, not arbitrable.
>
> The Gas Purchase Contract states that the parties agreement to arbitrate "any controversy between the parties ... arising under this Contract." Section 8.1. This is the same language held broad enough to encompass—as an arbitrable issue—an allegation of fraudulent inducement against the entire contract in *Prima Paint*, 388 U.S. at 398, 87 S.Ct. at 1803. *Prima Paint* held that, under section 4 of the FAA, the "making" of an agreement to arbitrate was not called into question by the allegation that the entire contract was fraudulently induced. Therefore, the Court concluded, the fraudulent inducement question was properly resolved by an arbitrator rather than a court. *Id.* at 403–04, 87 S.Ct. at 1805–06. Similarly, in this case, LIG has

not argued that the agreement to arbitrate is invalid separately from the entire contract. Thus the arbitration provision remains separate and enforceable under *Prima Paint*.

*Id.* at 244.

The *Mesa* court amplified its holding by further stating:

> The legislative purpose of the FAA, consistently interpreted as such by the Supreme Court, is to enforce arbitration clauses as liberally and rigorously as possible. "Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts." *Southland Corp. v. Keating*, 465 U.S. 1, 7, 104 S.Ct. 852, 856, 79 L.Ed.2d 1 (1984); see also *Graphic Communications Union v. Chicago Tribune Co.*, 779 F.2d 13 (7th Cir.1985), in which the court vigorously criticized resort to courts to delay clearly contracted arbitration.

*Id.* at 245.

Timberton urges this Court to construe the *Mesa* court's finding that the "case is very close factually to *Prima Paint*" and that "the worst result of the defect in the contract would be Mesa's inability to perform" to be an implicit recognition by that court that the question presented was whether the contract was voidable, rather than whether it was void.

This Court declines to find such an inference, at least in part, due to this Court's expectation that, having specifically stated LIG's argument as being founded upon its claim that the contract was "void ab initio," the court of appeals would have expressly recharacterized the issue had it so intended.

Also, as to *Mesa*, this Court notes that, while arguing that the Louisiana statute rendered any contract entered into in violation of the state "invalid", McCumber cites La.Civ.Code Ann. Art. 12 (West 1991) as codifying the common law principle that if a statute provides a penalty for its violation, a contract in violation of that statute is void. The statute specifically sets out that "[w]hatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed."

Although *Mesa* does not expressly rely upon Art. 12 of La.Civ.Code, it is difficult to imagine that LIG would have neglected to bring it to the court's attention.

The Court turns next to *Lawrence v. Comprehensive Business Services Company*, 833 F.2d 1159 (5th Cir.1987), wherein Robert Lawrence, a Texas CPA, entered into a franchise agreement with Comprehensive Business Services and afterward discovered that such constituted a violation of the Texas Public Accountancy Act of 1979. Fearing that if he continued under the agreement he might lose his license, Lawrence stopped using the trade name.

The agreement contained an arbitration clause and upon a suit filed by Mr. Lawrence and his wife in Texas state court to have the agreement declared illegal and unenforceable, Comprehensive removed to the U.S. District Court and moved to stay the litigation and compel arbitration.

The court of appeals in affirming the district court's granting of Comprehensive's motion set out the following pertinent reasoning, to-wit:

> The Lawrences seek to distinguish *Prima Paint*, arguing that because the alleged illegality "pervades the entire contract" and because the illegal provision "is so basic and so interwoven with the other contract terms, the agreement must stand or fall as an entirety." But the fraud in the inducement alleged in *Prima Paint* was just as pervasive as the illegality asserted in this case. Just as in *Prima Paint*, the Lawrences do not challenge the legality of the arbitration provision itself, but the legality of the entire contract. This court has applied *Prima Paint* to hold an arbitration clause enforceable in spite of a claim that the gas sales contract containing it was void from its inception because of the parties' failure to comply with a state statute regulating the sale of the state's gas. We regard this case as indistinguishable.
>
> The Lawrences argue that to permit arbitration of this suit "is in essence for

the court to effectuate an illegal agreement." But their argument presumes that the contract is illegal and that presenting the dispute to the arbitrator somehow effectuates an illegal contract. The flaw in the argument is that the legality of the contract has not yet been decided.

The Lawrences also argue that unlike a claim of fraud in the inducement, which is predicated on the existence of alleged facts that induced the agreement, the illegality argument before us involves "the purely legal application of a statutory proscription to the contract." But the Lawrences do not contend that the agreement did not allow the arbitrator to decide purely legal questions. Because the Lawrences do not attack the arbitration agreement itself, *Prima Paint* requires that their claim of illegality be arbitrated pursuant to the contract. (Footnote omitted).

*Id.* at 1162.

The omitted footnote cited to *Mesa, supra,* which was clearly alluded to as an application of *Prima Paint* in a case involving a "gas sales contract."

Notwithstanding Timberton's attempt to characterize the *Lawrence* contract as "voidable" and so distinguish it from the case at bar, this Court finds the language of the *Lawrence* court so broad as to encompass "void" even if, arguendo, "voidable" was inferred.

Here, as in *Prima Paint, Mesa,* and *Lawrence,* no basis appears to exist for an attack upon the arbitration agreement itself, and finding none, this court is compelled to follow those authorities.

## II.

■ In Timberton's brief submitted after oral arguments, it urges:

In the instant case, the Court should abstain from resolving the issues presented and require the parties to resort to state court to seek clarification of a previously uninterpreted state statute, specifically *Miss. Code Ann.,* Section 31-3-15 (Supp.1991). This can be accomplished without a remand and in full ac-

cordance with 28 U.S.C. Section 1447 and without this Court relinquishing its jurisdiction over this case. (Plaintiff's reply brief at p. 7)

As relied upon by McCumber, the United States Supreme Court in *Moses H. Cone Memorial Hosp. v. Mercury Const.,* 460 U.S. 1, 14, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983) (citing, *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)), noted:

'Abstention from the exercise of federal jurisdiction is the exception, not the rule. The Doctrine of Abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.'

This Court's understanding of *Prima Paint, Mesa* and *Lawrence, supra,* is that upon determining that there exists no question as to the making of the arbitration agreement or to the scope thereof, this Court is compelled to allow arbitrators to decide not only the questions involving performance and compensation, but also the more fundamental issue of whether the underlying contract is valid. The latter determination has not been an easy one for courts, including this Court; however, such has been clearly the expectation of this circuit, as evidenced by the *Mesa* court's statement to the effect that, where the validity issue involves construction of state law, the parties should select arbitrators who can pass on that question.

9 U.S.C. Sections 1–16 (1970 & Supp. 1991) provide for review of arbitration awards by this Court and although, as set out in *Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co.,* 918 F.2d 1215, 1218 (5th Cir.1990), "[t]he federal

courts will defer to the arbitrators' resolution of the dispute whenever possible," this court deems itself capable of reviewing any questions which might be properly brought before it following arbitration.

As articulated by Justice Brennan in his dissent to *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 32, 79 S.Ct. 1070, 1074, 3 L.Ed.2d 1058 (1959):

The doctrine of abstention, in proper perspective, is an extraordinary and narrow exception to [the duty of a district court to render prompt justice in cases between citizens of different states], and abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve one of two important countervailing interests: either the avoidance of a premature and perhaps unnecessary decision of a serious federal constitutional question, or the avoidance of the hazard of unsettling some delicate balance in the area of federal-state relationships.

While this Court agrees with McCumber that, upon finding arbitration to be mandatory, there is presently nothing from which this Court can abstain, neither does this Court contemplate the development of any extraordinary conflict between federal and state interest which might necessitate abstention.

### III.

Regarding the request for injunction, this Court begins by noting, as set out in Timberton's brief, that any decision to grant a preliminary injunction requires that the movant establish the following:

1) a substantial likelihood that he will prevail on the merits;

2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted;

3) the threatened injury to the movant outweighs the threatened harm injunction poses to the non-movant; and

4) the granting of the injunction will not disserve the public interest.

See *Mississippi Women's Medical Clinic v. McMillan,* 866 F.2d 788 (5th Cir.1989); *Stack v. Tenneco, Inc.,* 641 F.Supp. 199 (S.D.Miss.1986).

While this Court does not concede the existence of the remaining factors, it nevertheless bases its decision on a finding, amply supported by the foregoing arguments, that there exists no substantial likelihood of Timberton prevailing on the merits of its argument that no arbitration agreement exists.

IT IS THEREFORE ORDERED AND ADJUDGED that Timberton's Motion for Preliminary Injunction, for Consolidation, and for Abstention is hereby DENIED; and Cross-Motion of McCumber Construction, Inc. and McCumber Golf, Inc. to compel arbitration and dismiss Timberton's cause of action is hereby GRANTED.

SO ORDERED AND ADJUDGED.