Reversed and Remanded and Opinion filed June 22, 2004









Reversed and Remanded and Opinion
filed June 22, 2004.

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-02-00985-CV

_______________

 

ANDREW C. DEWEY, DEWEY INVESTMENT PARTNERSHIP, LTD.,
AND A.C. DEWEY & COMPANY, Appellants

 

V.

 

DAVID WEGNER, Appellee

_________________________________________________

 

On Appeal from the County Civil Court
at Law Number 2

Harris County, Texas

Trial Court Cause No. 770,252

_________________________________________________

 

O P I N I O N








Appellants, Andrew C. Dewey, Dewey Investment Partnership,
Ltd., and A.C. Dewey & Company, appeal a summary judgment in favor of
appellee, David Wegner, in his suit arising from his investment in the
partnership.  In four issues, appellants
contend (1) the trial court erred by refusing to compel arbitration, (2) there
is no evidence or insufficient evidence to support the summary judgment, (3)
Wegner=s claims are time barred under the
Texas Securities Act, and (4) the trial court abused its discretion in setting
the amount of security to supercede the judgment.  Because the trial court erred by refusing to
compel arbitration, we reverse and remand.

I. 
Background

Andrew C. Dewey is the president of A.C. Dewey &
Company.  A.C. Dewey & Company is the
general partner of Dewey Investment Partnership, Ltd.  The partnership issued a private placement
memorandum offering units in the partnership for sale.  In September 1996, Wegner purchased fifty
units and executed a subscription agreement governing his purchase.[1]  The subscription agreement contains the
following provision:

2.  Arbitration.  Any controversy or claim arising out of or
relating to this Subscription Agreement, an investment in the Partnership Units
or a breach of the Subscription Agreement, or any claim or dispute between the
parties to this Agreement (including disputes involving the General Partner of
the Partnership or Andrew C. Dewey), shall be settled by arbitration in
accordance with the Securities Arbitration Rules of the American Arbitration
Association, and judgment upon the award rendered by the arbitrator(s) may be
entered in any court having jurisdiction thereof.  All arbitration proceedings shall be held in
Houston, Texas and all arbitrators shall be appointed by the American
Arbitration Association under their rules.








Eventually, the partnership invested in an internet Adot.com@ company despite Wegner=s objection.  In October 2001, he withdrew from the
partnership and liquidated his interest after losses were attributed to this
investment.  Wegner sued the partnership,
A.C. Dewey & Company, and Dewey personally (hereafter collectively Athe Deweys@) for violations of Texas and federal
securities laws, fraud, deceit, breach of fiduciary duty, and rescission.  In essence, he alleges the partnership, as
comprised, was an illegal mutual fund because the Deweys were not licensed to
sell securities, and the offering was not registered or exempt from
registration under federal and state law. 
He also complains about the investment in the internet company because
the partnership agreement provided for investments in initial public offerings.

The Deweys filed an application to compel arbitration, and
after substitution of counsel, a supplemental application to compel
arbitration.  On August 20, 2002, the
trial court denied the application to compel arbitration.  Previously, Wegner had filed a motion for
summary judgment.  The trial court
granted the motion for summary judgment on August 22, 2002 awarding Wegner
$43,028.31 plus attorneys= fees, costs, prejudgment interest, and postjudgment
interest.  In response to the Deweys= motion for new trial, the trial
court reopened the summary judgment evidence. 
After reviewing additional evidence, the trial court denied the motion
for new trial.  This appeal followed.

II. 
Application to Compel Arbitration

In their first issue, the Deweys contend the trial court erred
in denying their application to compel arbitration.

A. 
Which Arbitration Act Applies?

Initially, we must decide which arbitration act governs this
dispute.  The Deweys cite both the
Federal Arbitration Act (AFAA@) and Texas Arbitration Act (ATAA@) but primarily argue the FAA applies
because performance of the subscription agreement involves interstate
commerce.  The Deweys contend the TAA
applies because performance of the subscription agreement does not involve
interstate commerce.








The FAA renders enforceable
arbitration agreements in contracts Aevidencing a transaction involving
commerce.@  9 U.S.C. ' 2 (West
1999);[2]
see Allied Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273B75
(1995); Jack B.
Anglin Co. v. Tipps,
842 S.W.2d 266, 269B70 (Tex. 1992) (orig. proceeding).  ACommerce@ is construed broadly and encompasses
all contracts relating to interstate commerce.   See Jack B. Anglin Co., 842 S.W.2d at 269‑70;
In re Tenet Healthcare, Ltd., 84 S.W.3d 760, 765 (Tex. App.CHouston [1st Dist.] 2002, orig.
proceeding).  The sale of securities has
been held to involve interstate commerce. 
See Eurocapital Group, Ltd. v. Goldman Sachs & Co., 17 S.W.3d
426, 430 (Tex. App.CHouston [1st Dist.] 2000, no pet.) (recognizing account
agreement concerning sale of securities involved interstate commerce); Thomas
James Ass=n, Inc. v. Owens, 1 S.W.3d 315, 319 (Tex. App.CDallas 1999, no pet.) (same); see
also Williams v. Cigna Fin. Advisors, 56 F.3d 656, 659 (5th Cir. 1995)
(reasoning U‑4 Registration involved interstate commerce because it was
contract involving sale of securities).

Here, the subscription agreement concerns the sale of
securities.  In the subscription
agreement, Wegner agreed to purchase units of the partnership.  The partnership agreement states that the
partnership was formed A[t]o buy, sell and trade publicly traded common stocks and
other publicly traded equity securities including convertible preferred stocks,
convertible debt securities and foreign equity securities, to invest in fixed
income securities, to invest monies in money market accounts and other liquid
investments and engage generally in the stock, option trading, securities and
investment business.@  Further, the
subscription agreement incorporates the private placement memorandum which
provides that the partnership will invest in publicly traded equity
markets.  Therefore, because the sale of
securities is incorporated in the subscription agreement, it involves
interstate commerce.[3]








Nevertheless, Wegner contends the TAA is applicable because
the subscription agreement contains a Texas choice-of-law clause.  However, the FAA preempts otherwise
applicable state law including the TAA.  See U.S. Const. art. VI, cl. 2; Jack B. Anglin Co., 842
S.W.2d at 271; Thomas James Ass=n, 1 S.W.3d at 319. 
Further, a choice-of-law clause that does not specifically exclude
application of federal law will not preclude application of the FAA.  See In re L & L Kempwood Ass=n, L.P., 9 S.W.3d 125, 127B28 (Tex. 1999) (orig. proceeding)
(holding FAA, not TAA, applied to arbitration dispute despite Texas
choice-of-law clause because clause did not specifically exclude application of
federal law); In re Educ. Mgmt. Corp., 14 S.W.3d 418, 423 (Tex. App.CHouston [14th Dist.] 2000) (orig.
proceeding) (citing Kempwood and noting choice-of-law provision that
does not specifically exclude application of federal law cannot be read to have
such an effect).[4]  Therefore, the FAA governs this arbitration
provision despite the choice-of-law clause because the clause does not
specifically exclude application of federal law.[5]

B. 
Application Of The FAA








To compel arbitration under the FAA, a party must prove the
existence of an arbitration agreement and that the subject claims fall within
the scope of that agreement.  See In re FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001)
(orig. proceeding); In re Media Arts Group, Inc., 116 S.W.3d 900, 904 (Tex. App.CHouston [14th Dist.] 2003, orig.
proceeding [mand. denied]).  Once the
trial court concludes that the arbitration agreement encompasses the claims,
and the opposing party has failed to prove any defenses to its enforcement, the
trial court has no discretion but to compel arbitration and stay its own
proceedings.  FirstMerit
Bank, 52 S.W.3d at 753B54; Media Arts Group, 116 S.W.3d at 904.

1.         Standard
of Review

Appellate courts ordinarily apply the abuse of discretion
standard to orders denying arbitration under the FAA.  See, e.g., Jack B. Anglin Co., 842
S.W.2d at 272B73; FirstMerit Bank, 52 S.W.3d
at 753B54; Media Arts Group, 116
S.W.3d at 904.  However, courts have
applied this standard because such orders are generally reviewed in mandamus
proceedings.  See Jack B. Anglin Co.,
842 S.W.2d at 272B73 (allowing mandamus review of orders denying arbitration
under the FAA because interlocutory appeal is not allowed);[6]
see also, e.g., FirstMerit Bank, 52 S.W.3d 749; Media Arts
Group, 116 S.W.3d 900.  Here, the
Deweys challenge the order denying arbitration in their appeal from the final
summary judgment.[7]  Therefore, the abuse of discretion standard
is not necessarily applicable.








However, even in a mandamus proceeding, whether an
arbitration agreement is enforceable under the FAA is a question of law and
reviewable de novo.  See In re Kellogg
Brown & Root, 80 S.W.3d 611, 615 (Tex. App.CHouston [1st Dist.] 2002, orig.
proceeding) (citing Tenet Healthcare Ltd. v. Cooper, 960 S.W.2d 386, 388
(Tex. App.CHouston [14th Dist.] 1998, pet. dism=d w.o.j.); see also Kline v. O=Quinn, 874 S.W.2d 776, 782 (Tex. App.CHouston [14th Dist.] 1994, writ
denied) (stating whether an agreement imposes a duty to arbitrate a particular
dispute is a matter of contract interpretation and a question of law for the
court).  In addition, when we review by
interlocutory appeal an order denying arbitration under the TAA, which has
similar requirements to the FAA,[8]
we apply a Ano evidence@ standard to factual determinations
and a de novo standard to legal determinations. 
See Ikon Office Solutions, Inc. v. Eifert, 2 S.W.3d 688, 693
(Tex. App.CHouston [14th Dist.] 1999, order, disp.
on merits, 125 S.W.3d 113 (Tex. App.CHouston [14th Dist.] 2003, pet.
denied).[9]  Here, the facts relevant to the arbitration
issue are not disputed, and we are presented only with questions of law.  Therefore, we will review the trial court=s order de novo.[10]

2.         Existence Of An Arbitration Agreement

The Deweys attached the subscription agreement to their
application to compel arbitration.  The
subscription agreement undisputably contains an arbitration provision.  However, Wegner contends the subscription
agreement is illegal because the Deweys were not licensed to sell securities
and the offering was not registered or exempt from registration. Wegner argues
the arbitration agreement is unenforceable because the entire contract
containing the arbitration provision is void; therefore, the trial court
correctly refused to compel arbitration. 
Citing Prima Paint Corp. v. Flood & Conklin Manufacturing. Co.,
388 U.S. 395 (1967), the Deweys contend the trial court was required to submit
Wegner=s illegality defense to arbitration
because Wegner does not limit his attack to the arbitration language in the
agreement.








a.         Prima Paint

In Prima Paint, the Court addressed whether a fraud in
the inducement claim relative to a contract containing an arbitration provision
must be resolved by the court or referred to the arbitrators.  388 U.S. at 402.  The Court recognized that arbitration
provisions are Aseparable@ from the contracts in which they are included.  Id. at 402B05. 
Under this separability principle, a federal court may only consider
issues relating to the making and performance of the arbitration
agreement.  Id.  Thus, if the claim is fraud in the inducement
of the arbitration provision itself, the court may adjudicate it.  Id. at 403B04. 
However, a claim of fraud in the inducement of the entire contract is
subject to arbitration pursuant to the arbitration provision.  Id.

Nevertheless, Wegner argues that Prima Paint is
inapplicable.  He asserts a distinction
between fraud in the inducement, which makes a contract voidable, and fraud in
the factum, which makes a contract void.  See Jeffrey W. Stempel, A Better
Approach to Arbitrability, 65 Tul.
L. Rev. 1377, 1399 (1991) (distinguishing between fraud in the
inducement, in which consent to the contract is not at issue but consent was
obtained through fraudulent representations, and fraud in the factum, which
makes consent to the contract ineffective). Wegner contends Prima Paint requires
arbitration when a party claims the entire contract is voidable, but not
when a party claims the entire contract is void.

b.         Federal Courts Applying Prima Paint








There is a conflict among federal circuit courts on the scope
of Prima Paint.  Some courts hold
that even when a party claims an entire contract is void, the party must prove
the arbitration agreement is invalid in order to avoid arbitration.  See, e.g., Lawrence v. Comprehensive
Bus. Serv. Co., 833 F.2d 1159, 1161B62 (5th Cir. 1987) (submitting
illegality defense to arbitration because it did not specifically relate to
arbitration clause); C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin
and Jenrette Sec. Corp., 912 F.2d 1563, 1567 (6th Cir. 1990) (rejecting
fraud in factum/inducement distinction and holding both claims are referable to
arbitration if they do not attack the arbitration provision specifically);
Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co., 774
F.2d 524, 529 (1st Cir. 1985) (stating court must not remove substantive
challenges to a contract from the arbitrators= consideration regardless of the
basis for the challenge unless there is an independent challenge to the
arbitration clause itself).

On the other hand, other courts have refused to apply Prima
Paint when a party claims the entire contract is void, as opposed to merely
voidable, reasoning that the court must first decide the validity of the
contract before the dispute can be submitted to arbitration.  See, e.g., Sphere Drake Ins. Ltd. v. All
Am. Ins. Co., 256 F.3d 587, 591 (7th Cir. 2001) (concluding that as
arbitration depends on a valid contract, an argument that the contract does not
exist cannot logically be resolved by the arbitrator); Sandvik AB v. Advent
Int=l Corp., 220 F.3d 99, 107 (3d Cir. 2000)
(distinguishing between contracts asserted to be void or non‑existent and
those that are merely voidable); Three Valleys Mun. Water Dist. v. E.F.
Hutton & Co., Inc., 925 F.2d 1136, 1137B40 (9th Cir. 1991) (holding Prima
Paint applies to arbitration provisions in voidable contracts, but not
arbitration provisions in contracts void from inception).[11]








The Fifth Circuit recently clarified the scope of Prima
Paint in Will-Drill Resources, Inc. v. Samsom Resources Co., 352
F.3d 211 (5th Cir. 2003).  Samson
executed a proposed sales agreement to purchase mineral leases from Will-Drill
and other sellers.  Id. at
213.  After several proposed sellers
refused to sign, Samson withdrew the agreement. 
Id.  Will-Drill and some
sellers who had signed the agreement sued Samson seeking specific performance.  Id. 
Although the agreement contained an arbitration clause, Samson opposed
arbitration asserting that no agreement of any kind was reached because the
agreement required the signature of all sellers before it was legally
binding.  Id.  Applying Prima Paint, the district
court ruled that Samson=s challenge to the entire agreement must be decided by the
arbitrators.  See id. at 213B14.

On appeal, the Fifth Circuit refused to distinguish for
purposes of applying Prima Paint between a claim that a contract is void
and a claim that a contract is merely voidable.  Id. at 215, n.15.[12]  The court held that where the parties have
formed an agreement containing an arbitration clause, any attempt to have the
entire agreement declared void or voidable is for the arbitrator.  Id. at 218.  Only if the arbitration clause is attacked on
an independent basis can the court decide the dispute.  Id. 
However, the court did distinguish a claim that a contract is void or
voidable from an attack on the very existence of a contract.

[T]he separability doctrine rests on the assumption
that there is an underlying agreement. 
That one of the parties later disputes the enforceability of that agreement
does not change the fact that at some point in time, the parties reached an
agreement, and that agreement included the decision to arbitrate disputes
arising out of the agreement.  The
existence of this agreement provides the arbitrator with the authority required
to decide whether the agreement will continue to exist.  Even if the arbitrator concludes that the
agreement was void, and the parties are returned to their pre‑agreement
positions as if the agreement never existed, the agreement existed long enough
to give the arbitrator the power to decide the dispute.  In contrast, where the very existence of an
agreement is challenged, ordering arbitration could result in an arbitrator
deciding that no agreement was ever formed. 
Such an outcome would be a statement that the arbitrator never
had any authority to decide the issue. . . . where a party attacks the very
existence of an agreement, as opposed to its continued validity or enforcement,
the courts must first resolve that dispute.








Id. at 218B19 (citations omitted) (second
emphasis added).[13]  Therefore, because Samson attacked the very
existence of an agreement, instead of the continued validity or enforcement of
an existing agreement, the district court was required to address its
challenge.  Id. at 219B20.

In contrast, Wegner does not attack the very existence of the
subscription agreement.  He does not
contend the parties never entered into the subscription agreement in the first
place.[14]  Instead, he seeks to have the existing
subscription agreement declared void as illegal.  His illegality defense is similar to the
defense raised in Mesa Operating Ltd. Partnership v. Louisiana Intrastate
Gas Corp., 797 F.2d 238 (5th Cir. 1986). 
Mesa contracted, as agent, to sell gas belonging to the State of
Louisiana to Louisiana Intrastate Gas (LIG). 
Id. at 240.  The contract
was performed satisfactorily by both parties until LIG ceased payments.  Id. 
Mesa then invoked the arbitration provision in the contract.  Id. 
LIG opposed arbitration asserting the entire contract was void ab
initio because Mesa had failed to obtain state approval to sell the gas, as
required by state law.  Id.  








The Fifth Circuit held that the dispute must be submitted to
arbitration because LIG did not attack the validity of the arbitration
agreement apart from the entire contract. 
Id. at 244 (citing Prima Paint, 388 U.S. at 398, 403B04). 
The court reasoned that the worst result, if any, of Mesa=s failure to obtain approval to sell
gas would be Mesa=s inability to perform the contract.  Id. 
Later, in Will-Drill, the court validated its previous decision
in Mesa.  See Will-Drill,
352 F.3d at 219.  Specifically, the Will-Drill
court emphasized that the Mesa contract was performed satisfactorily by
both parties for two years before LIG asserted it was void ab initio as
illegal.  Id. (citing Mesa,
797 F.2d at 240).  Thus, the challenge in
Mesa was to the continued viability of the agreement, rather than its
very existence.  Id.








Similarly, Wegner performed under the subscription agreement
for five years.  Pursuant to the
agreement, he purchased fifty units in the partnership.  For some time, he profited substantially from
this investment.[15]  Even when he liquidated his investment, he
realized a profit over his initial investment although the profit had
diminished.[16]  It was only when the amount of his profit
diminished that he sought to void the subscription agreement as illegal.  Therefore, although Wegner asserts the
subscription agreement is void ab initio, his illegality defense is
actually a challenge to the continued validity and enforcement of the
subscription agreement, and the Deweys= ability to perform, as opposed to
its very existence. See id; Mesa, 797 F.2d at 244.[17]  Under Fifth Circuit precedent, this type of
defense must be submitted to arbitration. 
See Will-Drill, 352 F.3d at 218B19; Mesa, 797 F.2d at 244B45; see also Lawrence,
833 F.2d at 1161B62.  Although we are
not necessarily bound by the Fifth Circuit, as opposed to other circuits, even
on federal issues, see Penrod Drilling Corp. v. Williams, 868 S.W.2d
294, 296 (Tex. 1993) (per curiam), we agree with its reasoning, and its decisions
are in line with Texas law applying the FAA.[18]

c.         Texas Courts Applying Prima Paint

Regardless of any disagreement among the federal courts, the
Texas Supreme Court has applied Prima Paint to hold that the validity of
an entire contract must be submitted to arbitration as long as the arbitration
provision is valid.  In FirstMerit
Bank, home buyers asserted unconscionability, duress, fraudulent
inducement, and revocation as defenses to arbitration despite an arbitration
addendum to their installment contract. 
52 S.W.3d at 756.  The court noted
that these defenses must specifically relate to the arbitration addendum, not
the contract as a whole, if they are to defeat arbitration.  Id. (citing Prima Paint, 388
U.S. at 403B04). 
The homeowners argued that their alleged revocation of the installment
contract did apply to the arbitration addendum rendering it
unenforceable.  In rejecting this
argument, the court stated

But this claim really pertains to the entire
installment contract and not just the Arbitration Addendum.  Again, the Arbitration Addendum=s validity is a separate issue from the validity of
the whole contract.  And given that the FAA=s primary objective is to encourage the arbitration of
contract-related issues, the issue of whether the underlying contract was
revoked is an issue that should be arbitrated, since it Aarises from or relates to@ the contract.

Id. at 758
(citations omitted) (emphasis added). 
While the court did not address who should decide whether an entire
contract is illegal, per se, it clearly expressed that a challenge to
the validity of the entire contract should be decided by the arbitrators.








Finally, this court has have recognized that when a party
claims an entire contract containing an arbitration clause is illegal, the
dispute should be submitted to arbitration. 
See In re H.E. Butt Grocery Co., 17 S.W.3d 360, 367 (Tex. App.CHouston [14th Dist.] 2000, orig.
proceeding).  AAs a general rule, >questions related to the enforcement
of a contract as a whole are properly referable to an arbitrator; it is only
when attack is made on the arbitration clause itself that a court, rather than
an arbitrator, should decide questions of validity.=@ Id. (quoting Prima Paint,
388 U.S. 395, 402B04).

In sum, the Deweys established the existence of an
arbitration agreement.  Wegner=s illegality defense to the entire
subscription agreement must be submitted to arbitration because Wegner does not
attack the arbitration agreement specifically.

3.         Claims
Within Scope Of Arbitration Agreement

Next, we must determine whether Wegner=s claims are within the scope of the
arbitration agreement.  Federal and state
law strongly favor arbitration.  Cantella & Co., Inc. v. Goodwin, 924
S.W.2d 943, 944 (Tex. 1996); Prudential Sec. Inc. v. Marshall, 909
S.W.2d 896, 898 (Tex. 1995) (orig. proceeding). 
Under the FAA, any doubts as to whether a plaintiff=s claims fall within the scope of the
arbitration agreement must be resolved in favor of arbitration.  Cantella & Co., 924 S.W.2d at 944;
Prudential Sec. Inc., 909 S.W.2d at 899. 
A[a] court should not deny arbitration
>unless it can be said with positive
assurance that an
arbitration clause is not susceptible of an interpretation which would
cover the dispute at issue.=@  Prudential
Sec. Inc, 909 S.W.2d at 899 (quoting Neal v. Hardee=s Food Sys., Inc., 918 F.2d 34, 37 (5th Cir.
1990)).  In determining whether a claim
falls within the scope of an arbitration clause, we must focus on the factual
allegations of the complaint, rather than the legal causes of action
asserted.  Id. at 900; AutoNation
USA Corp. v. Leroy, 105 S.W.3d 190, 195 (Tex. App.CHouston [14th Dist.] 2003, orig.
proceeding).








Wegner suggests that his claims are not within the scope of
the arbitration agreement.[19]  However, the arbitration agreement is quite
broad and requires arbitration of any Aclaim arising out of or relating to
this Subscription Agreement, an investment in the Partnership Units or a breach
of the Subscription Agreement, or any claim or dispute between the parties to
this Agreement.@  See AutoNation USA
Corp., 105 S.W.3d at 195B96 (recognizing language requiring arbitration of claims Aarising out of or relating to@ the particular contract is broad
language favoring arbitration).  Wegner=s allegations that the partnership
units amounted to an illegal mutual fund and the partnership made investments
contrary to its purpose clearly arise out of or relate to his Ainvestment in the Partnership Units.@ 
Further, because the subscription agreement governs Wegner=s purchase of partnership units, his
allegations arise out of or relate to the subscription agreement.  See Capital Income Prop.-LXXX v. Blackmon,
843 S.W.2d 22, 23 (Tex. 1992) (orig. proceeding) (holding partners= claims that partnership breached
fiduciary duty in operating and managing the partnership, misrepresenting the
financial health of the operation, and fraudulently inducing partners to invest
in the partnership were within scope of clause requiring arbitration of claims Aarising out of@ or Arelating to@ the partnership agreement); Hou‑Scape,
Inc. v. Lloyd, 945 S.W.2d 202, 206 (Tex. App.CHouston [1st Dist.] 1997, orig.
proceeding) (general contractor=s allegations that subcontractor misrepresented its expertise,
ability, and intent to perform and fraudulently induced general contractor into
subcontract were arbitrable because they arose out of and related to
subcontract).  Therefore, Wegner=s claims fall within the scope of the
arbitration agreement.[20]








III. 
Conclusion

The Deweys established the existence of an arbitration
agreement and that Wegner=s claims fall within the scope of the agreement.  We find Wegner failed to establish any viable
defenses to the arbitration provision.[21]  Therefore, the trial court erred by refusing
to compel arbitration.  The Deweys= first issue is sustained.[22]

Accordingly, we reverse the trial court=s judgment and remand this cause for
further proceedings consistent with our opinion.

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered
and Opinion filed June 22, 2004.

Panel consists of
Justices Anderson and Seymore and Senior Chief Justice Murphy.[23]

 

 











[1]  The
subscription agreement also gave the general partner authority to execute the
partnership agreement on Wegner=s behalf.





[2]  Section 2 of
the FAA provides AA written provision in any maritime transaction or a
contract evidencing a transaction involving commerce to settle by arbitration a
controversy thereafter arising out of such contract or transaction, or the
refusal to perform the whole or any part thereof, or an agreement in writing to
submit to arbitration an existing controversy arising out of such a contract,
transaction, or refusal, shall be valid, irrevocable, and enforceable, save
upon such grounds as exist at law or in equity for the revocation of any
contract.@ 





[3]  Although
Wegner now contends the subscription agreement does not involve interstate
commerce, he pleaded in his petition that the Deweys Aused the means and instrumentalities of interstate
commerce, including the United States mails@ to
commit the acts complained of. 





[4]  See also
Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 59B60 (1995) (recognizing choice‑of‑law
clause, if read in isolation, is merely a substitute for conflict‑of-laws
analysis that otherwise would determine what law applies); Capital Income
Prop.-LXXX v. Blackmon, 843 S.W.2d 22, 23 (Tex. 1992) (orig. proceeding)
(per curiam) (recognizing FAA is part of the substantive law of Texas). 





[5]  The
choice-of-law clause provides, AThis agreement is made and performable in Harris
County, Texas, shall be interpreted under the laws of the State of Texas . . . @





[6]  In contrast,
interlocutory appeal is allowed from an order denying arbitration under the
TAA.  See  Tex. Civ. Prac. & Rem. Code Ann. '' 171.001, 171.098(a)(1) (Vernon Supp. 2004).





[7]  The summary
judgment was signed two days after the order denying arbitration, obviating the
need, or opportunity, for the Deweys to obtain mandamus relief from the order
denying arbitration before filing their appeal. 
See Jack B. Anglin Co., 842 S.W.2d at 272B73 (recognizing the purpose of arbitration is to avoid
the time and expense of a trial and appeal).





[8]  See Ikon
Office Solutions, Inc. v. Eifert, 2 S.W.3d 688, 693 (Tex. App.CHouston [14th Dist.] 1999, order, disp. on merits,
125 S.W.3d 113 (Tex. App.CHouston [14th Dist.] 2003, pet. denied) (stating under
TAA, court must decide whether valid, enforceable arbitration agreement exists,
and whether claims asserted fall within the scope of the agreement).





[9]  But see
Leander Cut Stone Co. v. Brazos Masonry, Inc., 987 S.W.2d 638, 640 n.2
(Tex. App.CWaco 1999, order) (questioning applicability of Ano evidence standard,@
explaining inconsistencies among courts on the applicable standard, and
recognizing that the fact denial of arbitration under the FAA may be reviewed
through a mandamus proceeding further complicates matters).





[10]  Even under the
more stringent abuse of discretion standard, a trial court has no discretion in
determining what the law is or applying the law to the facts.  Walker v. Packer, 827 S.W.2d 833, 840
(Tex. 1992).  Therefore, our resolution
is the same regardless of which standard of review applies.





[11]  See also Andre
V. Egle, Note & Comment, Back to Prima Paint Corp. v. Flood &
Conklin Manufacturing Co.: To Challenge An Arbitration Agreement You Must
Challenge The Arbitration Agreement, 78 Wash.
L. Rev. 199 (2003) (discussing varying interpretations of Prima Paint
by courts, particularly void-voidable distinction, and concluding
arbitrators should resolve claim that a contract is void under separability
doctrine); but see Joshua R. Welsh, Comment, Has Expansion of the
Federal Arbitration Act Gone Too Far?: Enforcing Arbitration Clauses in Void Ab
Initio Contracts, 86 Marq. L. Rev.
581 (2002) (discussing conflict on application of Prima Paint but urging
United States Supreme Court to clarify that Prima Paint applies only
where a valid contract actually exists).





[12]  The court
rejected cases from other circuits which have made that distinction including Sphere
Drake, cited by Wegner.  See
Will-Drill, 352 F.3d at 215, n.15 (citing Sphere Drake, 263 F.3d at
32).





[13]  The court also
acknowledged some of its previous decisions refusing to compel arbitration
despite a challenge to the entire contract because in those cases, the parties
challenged the very existence of a contract.  Id. at 215B16 (citing Fleetwood Enter., Inc. v. Gaskamp,
280 F.3d 1069 (5th Cir. 2002) in which court decided children, who did not sign
parents= contract, were not bound by arbitration agreement
therein; Jolley v. Welch, 904 F.2d 988 (5th Cir. 1990) as allowing court
to resolve party=s claim that signature on forms containing arbitration
clause was forged).  Further, the court
acknowledged some of the cases from other circuits, cited by Wegner, in which
courts refused to compel arbitration; however, the court noted that in those
cases, a party attacked the very existence of a contract.  See id. at 216, n.26 (citing Chastain
v. Robinson‑Humphrey Co., 957 F.2d 851 (11th Cir. 1992), where one
party never signed the contract containing the arbitration clause); id.
at 216, n.28 (citing Sphere Drake, 256 F.3d 587, where party contended
that agent who signed the agreement lacked authority to bind the party; Three
Valleys, 925 F.2d 1136, where individual who signed the agreements had no
authority to bind the plaintiffs).





[14]  It is
undisputed Wegner signed the subscription agreement, and he does not challenge
his assent.





[15]  In their
brief, the Deweys state that Wegner made a substantial profit, and Wegner does
not dispute this fact.  See Tex. R. App. P. 38.1(f) (providing in a
civil case, we will accept as true a party=s
statement of facts unless another party contradicts them).  Further, Wegner pleads in his petition and
asserts in his brief that his initial $50,000 investment reached a high of
$139,136.02, thereby acknowledging that he benefitted from an existing
agreement for some time.





[16]  Wegner pleads
in his petition that his investment was worth $79,099.33 at liquidation, again
acknowledging that he benefitted from the agreement to some extent even at
liquidation.





[17]  See also
Bess v. Check Express, 294 F.3d 1298, 1304B06 (11th
Cir. 2002) (holding customer=s allegation that deferred payment transaction
containing arbitration agreement was void under Alabama law because defendant
check cashing company was not licensed to make transaction must be addressed by
the arbitrator because customer challenged the contents, not the existence, of
the contract); Burden v. Check into Cash of Kentucky, LLC, 267 F.3d 483,
489B90 (6th Cir. 2001), cert. denied, 535 U.S. 970
(2002) (holding plaintiffs= opposition to arbitration because loan contracts
containing arbitration clause violated Kentucky law challenged the substance,
rather than the existence, of the loan contracts).





[18]  Further, we are
bound by the United States Supreme Court=s
decisions.  See Penrod , 868
S.W.2d at 296.  Wegner=s defense is similar to the arbitration defense raised
in Prima Paint, which was referable to arbitration, because he alleges
he was fraudulently induced to enter into the subscription agreement by the
Deweys= representations that they were licensed to sell the
offering and it was properly registered. 
See Prima Paint, 388 U.S. at 398 (stating plaintiff=s principal contention was that defendant had
fraudulently represented it was solvent and able to perform its contractual
obligations when it was not).





[19]  Although
Wegner does not specifically dispute that his claims fall within the scope of
the arbitration agreement, he states, AThe
Subscription Agreement does not pertain to the litigation since the Appellants
made investments outside the business purpose of the Partnership.@  Further, a
movant must prove the claims fall within the scope of the arbitration agreement
to compel arbitration under the FAA. 
Therefore, we will address whether the arbitration agreement covers
Wegner=s claims.





[20]  We note Wegner
is pursuing statutory and tort claims. 
Nevertheless, they arise out of and relate to the subscription agreement
and his investment in the partnership units. 
See FirstMerit Bank, 52 S.W.3d at 754B56)
(arbitration compelled because plaintiffs alleged tortious behavior related to
financing contract containing arbitration clause); In re Conseco Fin.
Servicing Corp., 19 S.W.3d 562, 570 (Tex. App.CWaco  2000,
orig. proceeding) (holding that broad provision requiring arbitration of any
claims Aarising from or relating to@ the contract encompassed claimant=s statutory and tort claims although not based on the
formation, negotiation, terms, or performance of the contract).





[21]  Although
Wegner raised unconscionability as a defense to the arbitration agreement in
his opposition filed in the trial court, he has not briefed this defense on
appeal.





[22]  Because of our
disposition of the Deweys= first issue, we need not address their remaining
issues.





[23]  Senior Chief
Justice Paul C. Murphy sitting by assignment.