United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 26, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 02-31185

---

WILL-DRILL RESOURCES, Inc.; C ALLEN WILLIAMS; L W/E W FAMILY
PARTNERS LTD #2; L W/E W FAMILY PARTNERS LTD #2, #3; VISTA VENTURES
LLC; ET AL,

Plaintiffs - Counter Defendants - Appellees,

versus

SAMSON RESOURCES CO.,

Defendant - Counter Claimant - Appellant.

---

Appeal from the United States District Court
For the Western District of Louisiana

---

Before JOLLY, HIGGINBOTHAM, and STEWART, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Samson Resources Co. appeals an order staying litigation and
compelling arbitration pursuant to an arbitration clause in a
Proposed Sale Agreement between Samson, Will-Drill Resources and
several other sellers of mineral leases and related assets. Samson
contends that the Proposed Sale Agreement it signed was an offer to
purchase *all* of the sellers' property, which was rejected when less
than all of the sellers signed the Proposed Sale Agreement. Thus,

Samson contends that no agreement of any kind was reached between the parties. The district court held that because Samson's argument attacked the agreement generally, rather than the arbitration clause specifically, the separability doctrine of *Prima Paint* applied, and the court ordered arbitration. We vacate the order compelling arbitration and remand the case to the district court, concluding that where the very existence of any agreement to arbitrate is at issue, it is for the courts to decide based on state-law contract formation principles.

## I.

Will-Drill Resources Inc., acting for itself and as agent for over forty others, offered for sale mineral leases and related assets in Mississippi. Samson Resources Co., an oil and gas company interested in purchasing the properties, entered into a Confidentiality Agreement with Will-Drill which permitted Samson to review proprietary information about the properties and set out the process that would lead to a possible transaction.

After reviewing the information and negotiating with representative owner Earnest E. Nix Jr. ("Nix"), Samson presented Nix with a Proposed Sale Agreement ("PSA"). The PSA provided that Samson agreed to buy all of the sellers' properties. It was signed by Samson and had a separate signature block for each seller to sign. It also contained a provision which provided for arbitration of any "action dispute, claim or controversy of any kind now

2

existing or hereafter arising between the parties in any way arising out of, pertaining to or in connection with" the PSA.

Nix later contacted Samson indicating that eight of the sellers included on the signature pages had decided not to sell their properties at the price offered and identified four new sellers who wanted in on the deal.[1] Samson then notified Nix that it was withdrawing the PSA. Samson contended that the PSA was an offer to buy *all* of the properties listed in the PSA, and with less than all of sellers' signatures, Samson's offer was rejected and a counter-offer was made by Nix, which Samson was rejecting. Thus, there was no contract. Samson based its argument in part on the Confidentiality Agreement, which was included by reference in the PSA. Samson contended that the PSA requires the signature of all parties before any legally binding agreement can be formed.

Will-Drill and several of the sellers who had signed the PSA brought suit against Samson in Louisiana state court seeking specific performance of the contract or damages. They then amended their complaint seeking to invoke the arbitration provisions of the PSA. Based on diversity jurisdiction, Samson removed the case to the District Court and counterclaimed for breach of the Confidentiality Agreement. After removal, additional plaintiffs were added, all of whom had signed the PSA. The plaintiffs moved

---

[1] The parties dispute the nature of the withdrawal of the eight sellers. Will-Drill maintains that their withdrawal had been discussed prior to the drafting of the PSA and that they had been included in the document by error. Samson disputes this assertion.

3

to stay the proceedings and compel arbitration pursuant to the Federal Arbitration Act,[2] as well as partial summary judgment. Samson moved for partial summary judgment and moved to strike portions of an affidavit of Nix that had been presented to the court.

The magistrate judge reviewing the case applied the doctrine of separability,[3] and determined that whether the PSA was an enforceable contract was an issue for the arbitrator, not the court, to decide. The magistrate judge recommended that the court grant partial summary judgment in favor of Will-Drill by ordering arbitration, deny Samson's motion for partial summary judgment, and deny the motion to strike as moot. The district court agreed and entered the judgment as recommended. Samson appeals the judgment compelling arbitration and the denial of its motion for partial summary judgment.

II.

A.

---

[2] The FAA, 9 U.S.C. § 4 reads:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement. ... [U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement ....

[3] *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).

4

We review *de novo* the grant or denial of a petition to compel arbitration pursuant to § 4 of the FAA.[4] Courts perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute. "First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable."[5] When considering the first question, there are two considerations: "'(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'"[6] Although there is a strong federal policy favoring arbitration, "this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties."[7] "Because the FAA is at bottom a policy guaranteeing the enforcement of private contractual arrangements, we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement."[8] In determining whether an

---

[4] *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002).

[5] *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992) (internal citations omitted).

[6] *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003) (quoting *Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996)).

[7] *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002).

[8] *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (internal quotation marks and citations omitted).

agreement to arbitrate exists, we apply "ordinary contract principles."[9]

Will-Drill argues that the separability doctrine articulated in *Prima Paint*,[10] as recently applied by this court in *Primerica*,[11] required the district court to order arbitration. In *Primerica*, the plaintiff resisted arbitration, claiming he lacked the mental capacity to execute a contract under Mississippi law, and therefore the contract containing an arbitration clause which he signed was void and the court could not order arbitration.[12] Applying the separability doctrine, we held that because the capacity defense was directed at the contract generally and not a specific challenge to the arbitration clause, the capacity defense must be submitted to arbitration along with the rest of the dispute between the parties.[13] We stated the separability principle in broad terms:

---

[9] *Fleetwood*, 280 F.3d at 538.

[10] *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).

[11] *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469 (5th Cir. 2002).

[12] *Id.* at 471.

[13] *Id.* at 472; *see also Snap-On Tools Corp. v. Mason*, 18 F.3d 1261, 1267-68 (1994) (submitting fraudulent inducement defense to arbitration because allegations of fraud did not specifically relate to the arbitration clause); *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538-39 (1992) (submitting allegations of fraud in obtaining signatures to contract to arbitration because defense was not specific to the arbitration agreement); *Lawrence v. Comprehensive Bus. Serv. Co.*, 833 F.2d 1159, 1162 (5th Cir. 1987) (submitting illegality defense to arbitration because it did not specifically relate to arbitration clause); *Mesa Operating Ltd. P'ship v. La. Intrastate Gas Corp.*, 797 F.2d 238, 244 (5th Cir. 1986) (submitting claim that contract was void *ab initio* to arbitration because parties failed to demonstrate that the arbitration agreement was "invalid separately from the entire contract").

"[U]nless a defense relates specifically to the arbitration agreement, it must be submitted to the arbitrator as part of the underlying dispute."[14]

Samson argues that *Prima Paint* does not apply here, even though Samson's argument that all of the sellers' signatures were required for the formation of the contract is directed at the making of the contract generally, rather than the arbitration clause specifically. Samson characterizes its argument as challenging the very existence of a contract, rather than a defense to an existing contract which it seeks to have declared void or voidable.[15] Samson notes that it is for the courts, and not an arbitrator, to decide whether the parties have agreed to arbitrate. Thus, Samson concludes that the court, not the arbitrator, must decide whether less than all of the sellers' signatures constitutes acceptance of the offer and the creation of a contract. Where no contract exists, there is no agreement on anything, including an agreement to arbitrate.

Samson's argument finds some support in our precedent. In *Jolley v. Welch*, investors brought suit against their stockbroker

---

[14] *Primerica Life Ins. Co.*, 304 F.3d at 472.

[15] Some circuits distinguish between defenses which make a contract void and those which merely make the contract voidable. *See, e.g.*, *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 32 (2d Cir. 2001); *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 107 (3d Cir. 2000). In *Primerica*, we rejected this distinction as inconsistent with our precedent. 304 F.3d at 472 n. 2 (citing *Mesa Operating*, 797 F.2d at 244).

7

and brokerage firm.[16]  The brokerage firm moved to submit the claims against it to arbitration, and an issue arose about the possible forgery of the plaintiffs' signatures on forms containing the arbitration clauses.[17]  The forgery issue was referred to the magistrate judge "for an evidentiary hearing on which, if any, of the original arbitration agreements bear legitimate signatures, and which, if any, are forgeries."[18]  The brokerage firm argued that the district court erred in referring the forgery issue to the magistrate judge because under *Prima Paint*, "a claim of fraud in the inducement of the contract generally, as opposed to fraud in the inducement of the arbitration clause, may not be passed on by a federal court."[19]

We held that "'the first task of a court asked to compel arbitration of a dispute *is to determine whether the parties agreed to arbitrate that dispute*.'"[20]  Because the brokerage firm declined to introduce an agreement signed by one of the plaintiffs, we concluded that "the district court accordingly had no opportunity to reach even its 'first task,'" and therefore the district court did not err in refusing to order arbitration of that plaintiff's

---

[16] 904 F.2d 988, 990 (5th Cir. 1990).

[17] *Id.* at 993.

[18] *Id.*

[19] *Id.* at 993-94.

[20] *Id.* at 994 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (emphasis added)).

claim.[21]  Although not explicitly stated in the opinion, we implicitly rejected the argument that the forgery issue should have been presented to the arbitrator, and was improperly before the district court.

Similarly, in *Fleetwood Enterprises, Inc. v. Gaskamp*,[22] we refused to order arbitration of a dispute where one of the parties claimed that it was not bound by the entire agreement, including the arbitration clause.[23]  In *Gaskamp*, the parents brought suit against the manufacturer of their mobile home on behalf of themselves and as next friend of their minor children for injuries sustained from exposure to toxic fumes present in their new mobile home.  The manufacturer tried to compel arbitration, based on an arbitration clause in the sales agreement signed by the parents. The parents resisted arbitration of their children's claims, arguing that the children were not bound by the arbitration clause because the children did not sign the agreement.  We turned to Texas law to determine "whether there [was] a valid agreement to arbitrate" between the children and the manufacturer, and concluded that under Texas law, the children were not bound by their parents' signatures.[24]  Even though the existence of the entire agreement,

---

[21] *Id.*

[22] 280 F.3d 1069 (5th Cir. 2002).

[23] *Id.* at 1077.

[24] *Id.* at 1074-77.

9

and not just the arbitration clause, was at issue, we did not send the issue to the arbitrator. We stated the basic principle that it is for the courts to decide whether the parties have agreed to arbitrate, and that "[t]his determination is generally made on the basis of 'ordinary state-law principles that govern the formation of contracts.'"[25]

Our sister circuits have reached the same conclusion, refusing to order arbitration of disputes where one party claims that it is not bound by the arbitration agreement, either because it was not an original party to the agreement,[26] its signature was forged,[27] or because the person signing on its behalf was acting outside the scope of his authority and thus the party is not bound by the signature.[28] In all of these cases, the parties resisting

---

[25] *Id.* at 1073 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

[26] *See Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851 (11th Cir. 1992) (refusing to compel arbitration where one party had not signed the agreement containing the arbitration clause); *I.S. Joseph Co. v. Mich. Sugar Co.*, 803 F.2d 396 (8th Cir. 1986) (holding that question of whether the assignee of party to an agreement including arbitration clause could compel arbitration was for the courts).

[27] *See Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362 (2d Cir. 2003) (refusing to order arbitration where signature on agreement was not genuine).

[28] *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587 (7th Cir. 2001) (refusing to compel arbitration where party contended that agent who signed the agreement lacked the authority to bind the party); *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99 (3d Cir. 2000) (same); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136 (9th Cir. 1991) (same); *see also Snowden v. Checkpoint Cashing*, 290 F.3d 631, 637 (4th Cir. 2002) (citing favorably decisions from other circuits refusing to compel arbitration where a party contends that it never assented to the contract containing the arbitration provision).

10

arbitration attack the existence of the entire agreement, not the arbitration clause specifically.

Refusing to order arbitration of a dispute where one of the parties claims that it never signed the agreement, and therefore never agreed to anything, is consistent with the Supreme Court's pronouncements that arbitration "does not require parties to arbitrate when they have not agreed to do so," and that "[a]rbitration under the FAA is a matter of consent, not coercion."[29] The Court has made clear that arbitration is a matter of private contract, and "[i]t goes without saying that a contract cannot bind a nonparty."[30] The Court has concluded that:

> a gateway dispute about whether the parties are bound by a given arbitration clause raises a "question of arbitrability" for a court to decide. *See* [*First Options of Chicago, Inc.*, 514 U.S. at 943-946] (holding that a court should decide whether the arbitration contract bound parties who did not sign the agreement); *John Wiley & Sons, Inc. v. Livingston*, [376 U.S. 543, 546-547 (1964)] (holding that a court should decide whether an arbitration agreement survived a corporate merger and bound the resulting corporation).[31]

In *First Options of Chicago v. Kaplan*,[32] the dispute centered on several agreements to resolve the payment of debts owed by

---

[29] *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293-94 (2002) (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478-79 (1989) (internal quotation marks omitted)).

[30] *Waffle House, Inc.*, 534 U.S. at 294.

[31] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (emphasis added).

[32] 514 U.S. 938 (1995).

11

Manuel Kaplan, his wife, and his wholly owned investment company, MK Investments, Inc. MKI had signed an agreement containing an arbitration clause, but the Kaplans had not done so in their personal capacity. First Options moved to compel arbitration, and MKI agreed to arbitrate while the Kaplans refused, arguing that since they had not signed any agreements containing an arbitration clause, they had not agreed to arbitrate any disputes.[33]

The Court analyzed the problem by distinguishing among three related questions.[34] The first question was the merits of the dispute – whether the Kaplans owed First Options the money. The second question was whether the parties agreed to arbitrate the merits – the question of arbitrability. And the final question was who should decide the second question. The unanimous Court held that absent clear and unmistakable evidence that the parties agreed to arbitrate the question of arbitrability, the third question is for the courts.[35] The Court then stated that "[w]hen deciding whether the parties agreed to arbitrate a certain matter [the second question] ... courts generally ... should apply ordinary state-law principles that govern the formation of contracts."[36]

---

[33] *Id.* at 940-41.

[34] *Id.* at 942.

[35] *Id.* at 944 (internal quotation marks and brackets omitted).

[36] *Id.* at 944.

This is consistent with the Court's earlier opinion in *Perry v. Thomas*.[37] There the Court stated that the question of whether a party could compel arbitration of a dispute based on an arbitration agreement it had not signed "simply presents a straightforward issue of contract interpretation:  whether the arbitration provision inures to the benefit of [the party] and may be construed, in light of the circumstances surrounding the litigants' agreement, to cover the dispute that has arisen between them.  This issue may be resolved on remand."[38]

These cases present two principles which are in tension. First, it is clear that because arbitration is a matter of contract, where a party contends that it has not signed any agreement to arbitrate, the court must first determine if there is an agreement to arbitrate before any additional dispute can be sent to arbitration.[39] We agree with those circuits which have included claims that the signature is forged or the agent lacked authority to bind the principle in this category.[40] On the other hand, where parties have formed an agreement which contains an arbitration clause, any attempt to dissolve that agreement by having the entire

---

[37] 482 U.S. 483 (1987).

[38] *Id.* at 492.

[39] *See Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069 (5th Cir. 2002); *First Options of Chicago v. Kaplan*, 514 U.S. 938 (1995).

[40] *See Jolley v. Welch*, 904 F.2d 988, 993-94 (5th Cir. 1990); *see supra* notes 27 & 28 and accompanying text.

13

agreement declared voidable or void is for the arbitrator.[41]  Only if the arbitration clause is attacked on an independent basis can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator.[42]

B.

This case lies between these principles.  Samson is attacking the very existence of any agreement.  On the other hand, we have before us a document signed by all parties wishing to enforce it, as well as the party refusing arbitration.  Its validity is being attacked on a basis that is directed at the agreement in general, rather than the arbitration clause in particular.

We base our answer on the fundamental principle that arbitration is a matter of contract which cannot be forced upon a party absent its consent.  Where the very existence of any agreement is disputed, it is for the courts to decide at the outset whether an agreement was reached, applying state-law principles of contract.

We reject the argument that where there is a signed document containing an arbitration clause which the parties do not dispute they signed, we must presume that there is a valid contract and send any general attacks on the agreement to the arbitrator.  The base point to which the analysis inevitably returns is that the

---

[41] *See Primerica Life Ins. Co. v. Brown*, 304 F.3d 469 (5th Cir. 2002); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).

[42] *See Primerica Life Ins. Co.*, 304 F.3d at 472.

14

separability doctrine rests on the assumption that there is an underlying agreement. That one of the parties later disputes the enforceability of that *agreement* does not change the fact that at some point in time, the parties reached an agreement, and that agreement included the decision to arbitrate disputes arising out of the agreement. The existence of this agreement provides the arbitrator with the authority required to decide whether the agreement will continue to exist.[43] Even if the arbitrator concludes that the agreement was void, and the parties are returned to their pre-agreement positions *as if* the agreement never existed, the agreement existed long enough to give the arbitrator the power to decide the dispute.

In contrast, where the very existence of an agreement is challenged, ordering arbitration could result in an arbitrator deciding that no agreement was ever formed. Such an outcome would be a statement that the arbitrator *never* had any authority to decide the issue. A presumption that a signed document represents an agreement could lead to this untenable result.[44] We therefore conclude that where a party attacks the very existence of an

---

[43] *See Lawrence v. Comprehensive Bus. Servs. Co.*, 833 F.2d 1159 (5th Cir. 1987) (compelling arbitration of claim that contract was void as illegal); *Mesa Operating Ltd. P'ship v. La. Intrastate Gas Corp.*, 797 F.2d 238 (5th Cir. 1986) (same).

[44] *See Kulukundis Shipping v. Amtorg Trading Corp.*, 126 F.2d 978, 986 (2nd Cir. 1942) (noting that if an arbitrator had the authority to reexamine a court's prior determination that an agreement existed, it "would (1) negate the court's prior contrary decision on a subject which, admittedly, the [U.S. Arbitration] Act commits to the court, and (2) destroy the arbitrators' authority to decide anything and thus make their decision a nullity").

15

agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute.

This holding is consistent with *Mesa Operating Limited Partnership v. Louisiana Intrastate Gas Corp.*[45] In *Mesa*, the party resisting arbitration challenged the entire agreement based on illegality, arguing that the contract was therefore void *ab initio*.[46] We rejected the argument that the doctrine of separability did not apply and ordered arbitration.[47] The parties reached an agreement since the contract was performed satisfactorily by both sides for about two years.[48] Thus, the challenge in *Mesa* was to the continued viability of the agreement, rather than its very existence.[49]

We are forced here to an admittedly fine distinction. And we do not doubt that this distinction will occasionally be elusive. But these cases, as this one, fall at the margins of our two competing principles. Here, we find that Samson is attacking the existence of an agreement, as opposed to the continued validity of an agreement that already exists. We are informed in this

---

[45] 797 F.2d 238 (5th Cir. 1986).

[46] *Id.* at 244.

[47] *Id.*

[48] *Id.* at 240.

[49] *See also Lawrence v. Comprehensive Bus. Servs. Co.*, 833 F.2d 1159, 1160-61 (5th Cir. 1987) (ordering arbitration of dispute where party challenged agreement on the basis of illegality, but party had been abiding by the agreement prior to the dispute).

16

conclusion by a hypothetical offered by Samson, albeit with our modification.

If A were to send an unsigned proposal containing an arbitration clause to B, offering to buy Blackacre for $100,000, and B were to sign the proposal after striking Blackacre and substituting Whiteacre, no agreement was reached. It could be said that A and B were both willing to arbitrate, but A was willing to arbitrate the purchase of Blackacre, while B was willing to arbitrate the sale of Whiteacre. Because A did not sign the counter-offer, if A contends that no agreement to arbitrate exists a court must first decide if an agreement exists between A and B.[50] Under the same scenario, except that A signed the proposal to buy Blackacre before sending it to B, A's signature does not change the fact that A and B, while willing to arbitrate, never reached an agreement to arbitrate.

Samson contends that his is the second scenario. We decline to express an opinion on the merits of Samson's argument, beyond the observation that a court must first resolve this dispute.

C.

Samson also challenges the district court's denial of its motion for partial summary judgment that no contract exists and

---

[50] *See Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069 (5th Cir. 2002) (refusing to order arbitration after court determined that party did not sign agreement and was not bound under state contract law); *First Options of Chicago v. Kaplan*, 514 U.S. 938 (1995) (holding that question of whether party agreed to arbitrate was for the court to decide based on state-law principles of contract formation).

17

that Will-Drill violated the Confidentiality Agreement by filing suit. Samson asks us to reverse and render judgment. The district court ordered arbitration, and did not further address the parties' dispute. We vacate the order compelling arbitration. We decide nothing more, remanding the remaining issues to the district court.

III.

We VACATE the district court's order staying proceedings and enforcing arbitration, and the district court's grant of partial summary judgement to Will-Drill. The case is REMANDED for further proceedings consistent with this opinion.