**AMSOUTH BANK Plaintiff**

v.

**Lois C. BOWENS and Zhinga
A. Bowens Defendants**

**No. CIV.A.4:04 CV 81LN.**

United States District Court,
S.D. Mississippi,
Eastern Division.

Jan. 7, 2005.

Paul N. Davis, Emerson Barney Robinson, III, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for Plaintiff.

Mary Judith Barnett, Barnett Law Firm, James Franklin Noble, III, Noble & Noble, Jackson, MS, for Defendants.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

The primary motions before the court for consideration at this time are a motion and supplemental motion by plaintiff AmSouth Bank to compel arbitration pursuant to § 4 of the Federal Arbitration Act, 9 U.S.C. § 4. Defendants have responded in opposition to these motions, and have filed numerous additional motions of their own relating to AmSouth's motions, including a motion to dismiss for lack of subject matter jurisdiction; two motions to strike AmSouth's objections and AmSouth's "further objections" to certain evidence submitted by defendants which AmSouth contends is inadmissible; to take judicial notice or, alternatively, for oral argument and for appointment of a banking expert witness pursuant to Federal Rule of Evidence 706; and to strike newly asserted argument and authorities in an AmSouth rebuttal memo-

randum; to strike unsworn declaration of Michelle Johnson.

On either March 28 or March 29, 2001, both defendants opened accounts with AmSouth into which each deposited $109,000, their respective shares of a lawsuit settlement.[1] Subsequently, both of the Bowenses claimed that money had been taken from their accounts by an AmSouth employee, Lana Henderson, without their knowledge or consent. Although the Bowenses complained to AmSouth, AmSouth maintained that they were mistaken and hence refused to refund the sums alleged to have been stolen. The Bowenses thus filed suit in state court against AmSouth and Henderson. AmSouth responded by filing the present suit to compel arbitration, and filed its first motion to compel arbitration.[2]

Prior to reaching the substance of that motion or AmSouth's supplemental motion to compel arbitration, the court notes that defendants have moved to dismiss, or alternatively, to stay this action in favor of the pending state court litigation.

In that motion, defendants argue that this case must be dismissed because Lana Henderson, a Mississippi citizen whose presence in this suit would destroy diversity jurisdiction, is an indispensable party. The court addressed and rejected the identical argument in another case involving a complaint by AmSouth to compel arbitration of claims asserted against both it and one of its employees, *AmSouth Bank v. Stewart*, Civil Action No. 3:03CV1180, 2004 WL 914638 (S.D.Miss. Apr. 27, 2004). The court found in *Stewart* that the situation presented was not materially distinguishable from similar cases in which this court had found there to be diversity jurisdiction and declined requests for abstention, and noted in particular the court's prior decision in *American General Financial Services, Inc. v. Harris*, Civil Action No. 3:02CV1756LN (March 18, 2003). As noted in *Stewart*, the plaintiff in *Harris*, American General, had filed suit under § 4 of the FAA seeking to compel arbitration of claims brought in state court against its employee, Thomas Edgeworth. In *Harris*, as here and as in *Stewart*, the defendants

1. The parties—and particularly defendants—have devoted what seems to the court an inordinate portion of their briefing to the issue of whether the accounts were opened on March 28th or March 29th. This is because AmSouth has claimed that the accounts were opened on March 28th, as evidenced by signature cards reflecting that they were signed by the defendants on March 28th, whereas defendants claim that the signatures are forgeries, and contend that the fact that they are forgeries is manifest not only from a comparison of the signatures themselves but also from the fact that the accounts were not even opened on March 28th, but rather were opened on March 29th. Other than as it might bear on whether the signatures are forged, the date on which the accounts were opened is irrelevant. And while defendants apparently believe that proving the accounts were opened on the 29th would be practically dispositive of the forgery issue, the court does not entirely follow their reasoning nor does it

share their view as to the importance of this issue. Accordingly, the court will deny their motion to appoint a banking expert to address/refute AmSouth's explanation as to the date on which the accounts were opened.

2. Although defendants argue that the motion to compel arbitration needlessly duplicates the complaint to compel arbitration and chastises AmSouth for having filed its motion at all, the filing of such motions in suits to compel arbitration is routine practice. The court views such motions as akin to summary judgment motions, and indeed, they are quite often denominated as such. In the absence of such motions, complaints to compel arbitration would necessitate trials rather than summary dispositions, though the latter has been recognized as a goal of the Federal Arbitration Act. Defendants' objection to the manner in which the issue of arbitration has been brought to the court for decision is therefore not well founded.

had sought dismissal of the federal arbitration action on the basis that an employee, Edgeworth, was an indispensable party, and had urged, alternatively, that the court abstain in favor of the state court action in which the issue of arbitration could be brought and decided. The court denied the motion, stating as follows:

> In seeking dismissal, Peoples relies upon rather cursory arguments that Edgeworth should be considered an indispensable party and/or that the court should abstain on grounds of judicial economy. In opposing dismissal, plaintiffs rely on *Snap-On Tools, Inc. v. Mason,* 18 F.3d 1261, 1264 (5th Cir.1994), in which the Fifth Circuit held that the fact that employee defendants who fell within the scope of an arbitration agreement were party defendants in the underlying state court litigation did not render them indispensable parties in a federal action to compel arbitration brought under the Federal Arbitration Act, *id.* at 1264, nor did the absence of such parties from the federal court action require the federal court to abstain under the principles of abstention enunciated in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). *Mason* supports a conclusion that Edgeworth is not an indispensable party to this arbitration action brought by Edgeworth's employer AGFS, and the holding likewise rebuts Peoples' argument that the court should abstain on grounds of judicial economy. Peoples submits no valid reason as to why she is entitled to dismissal, and this motion will therefore be denied.

As it held in *Stewart,* the court's analysis and observation in *Harris* applies equally here and on that basis, the court will deny defendants' motion to dismiss or to stay. That brings the court to AmSouth's motion and supplemental motion to compel arbitration.

In its first motion, AmSouth argued that the customer agreements governing the defendants' respective accounts included an arbitration agreement binding both defendants to arbitrate their claims in the underlying action, and in further support of its motion, produced signature cards, purportedly signed by the Bowenses, which recited that both had received copies of the customer agreements containing the arbitration provisions upon which AmSouth grounded its motion. The Bowenses responded to AmSouth's motion, denying in sworn affidavits that they had agreed to arbitrate anything. According to the Bowenses, not only were they never furnished copies of the customer agreements containing the arbitration provisions, but their names were forged on the signature cards. They thus insisted that they could not be compelled to arbitrate anything.

Despite the assertions in the Bowenses' affidavits, AmSouth has argued that it is entitled to an order compelling arbitration on the basis of the arbitration provision in the customer agreements governing the accounts opened by defendants in March 2001, for one or more of a number of reasons. However, AmSouth filed a supplemental motion to compel arbitration in which it contends that even if the Bowenses cannot be compelled to arbitrate by virtue of the March 2001 customer agreements, they are nevertheless bound to arbitrate their present claims relating to these 2001 accounts by virtue of arbitration agreements contained in prior accounts opened and maintained by each of the Bowenses. The Bowenses oppose this supplemental motion, arguing that even if they had arbitration agreements in connection with other, prior accounts, those

agreements do not extend to cover the present dispute.[3]

As the Fifth Circuit has made clear, "[r]efusing to order arbitration of a dispute where one of the parties claims that it never signed the agreement, and therefore never agreed to anything, is consistent with the Supreme Court's pronouncements that arbitration 'does not require parties to arbitrate when they have not agreed to do so,' and that '[a]rbitration under the FAA is a matter of consent, not coercion.'" *Will–Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 216–217 (5th Cir.2003) (citation omitted). Moreover, the court also recognizes that "a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Id.* (citations omitted).

In *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, the Supreme Court held that under the FAA, the federal courts may only consider "issues relating to the making and performance of the agreement to arbitrate." 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The Court held that the "making" of an agreement to arbitrate was not called into question by a general allegation that the entire contract was void because of fraudulent inducement, *see id.* And, since the defense asserted in *Prima Paint* did not attack the "making" of the agreement to arbitrate itself, the Court ordered arbitration, noting that the FAA reflects an "unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Id.* at 404, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270. *See Banc One Acceptance Corp. v. Hill,* 367 F.3d 426, 429 (5th Cir.2004) (discussing Court's reasoning in *Prima Paint* ).

Addressing the scope and application of the *Prima Paint* rule, the Fifth Circuit has held that "where the 'very existence of a contract' containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter." *Hill,* 367 F.3d at 429 (citing *Will–Drill Resources, Inc. v. Samson Resources Co.,* 352 F.3d 211, 218 (5th Cir.2003) as example of such a case). In the far more common case of a party who does not challenge the existence of a contract, but rather attacks the enforceability of the agreement, alleging that the contract is void ab initio or voidable, the severability doctrine contained in *Prima Paint* applies. *Id.* (citing *Will–Drill* ).

Under this approach, "[o]nly if the arbitration clause is attacked *on an independent basis* can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator." *Id.* (emphasis added); *accord Primerica Life,* 304 F.3d at 472 (holding that "unless a defense relates specifically to the arbitration agreement, it must be submitted to the arbitrator as part of the underlying dispute"). In other words, where the existence of the contract is not in question, the court must examine whether the allegations made by the party resisting arbitration challenge the "making of the agreement to arbitrate itself" as opposed to "allegations regard-

---

**3.** In addition to opposing this supplemental motion on the merits, defendants argue that the motion should be disregarded in view of AmSouth's failure to secure leave of court to file an amended complaint seeking to compel arbitration on the basis of a different arbitration agreement than that originally identified by AmSouth. In the court's opinion, no amendment to the complaint was required in order for AmSouth to make this argument, and in any event, an amendment, if requested, would have been granted in view of defendants' answer and response to AmSouth's original motion.

ing the contract as a whole." *Dillard v. Merrill Lynch,* 961 F.2d 1148, 1154 n. 9 (5th Cir.1992) (citing *Prima Paint,* 388 U.S. at 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270) (internal quotation marks omitted). Only if the allegations concern solely the arbitration term and are not generally applicable to the agreement as a whole may the district court properly adjudicate the enforceability of the arbitration clause. *See id.* (holding that by "focus[ing] specifically on the arbitration provision as an adhesive term," the party resisting arbitration had met the threshold requirement to challenge the making of the arbitration agreement). Where a defense does not specifically relate to the arbitration agreement, however, it must be submitted to the arbitrator as part of the underlying dispute. *See Primerica Life,* 304 F.3d at 472 (holding that a claim that one of the parties lacked the capacity to contract must be submitted to the arbitrator); *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (noting that "the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability") (internal quotation marks and citations omitted).

*Hill,* 367 F.3d at 430.

■ In the case at bar, the Bowenses do not deny that they have a contractual relationship of some sort with AmSouth by virtue of having deposited funds with AmSouth. However, the Bowenses take the position that they are not bound by *any* of the provisions of the customer agreement, including the arbitration provision, inasmuch as they never signed the agreement, or the signature cards to manifest their assent to the customer agreement, and were never provided copies of the account agreement. While the court realizes that the facts of this case are somewhat unusual in terms of a *Prima Paint* analysis, the court is of the opinion that since the Bowenses' forgery allegation regards the customer agreement as a whole and not just the arbitration clause of the customer agreement, it is an issue that must be submitted to the arbitrator as part of the underlying dispute, assuming, that is, that the dispute at issue in the underlying suit falls within the scope of the arbitration clause of the customer agreement.

As to this issue, the Bowenses do not deny that the arbitration agreement, as drawn, is sufficiently broad to cover their claims against AmSouth, but they submit that it cannot be interpreted to cover all their claims against Jana Henderson. The court, however, disagrees. The arbitration provision recites the following:

**ARBITRATION**: *Any controversy, claim, or dispute* between us (or *between you and any of our employees,* agents, representatives, parent or affiliated companies, or any of their employees) *shall be settled by arbitration* as set forth below. Such arbitration shall include, without limitations, any dispute or controversy regarding or pertaining in any way to any of the following: (a) this Agreement; (b) the account; (c) any charge or cost incurred under this Agreement or the Account; (d) the collection of any amounts due under this Agreement or the Account; (e) any contract or alleged tort related to or arising out of your business or relationship with us; and (f) any statements or representations made to you.

This language undeniably covers the dispute between the Bowenses and AmSouth and between the Bowenses and Jana Henderson.

Accordingly, it is ordered that AmSouth's motion to compel arbitration is granted. It is further ordered that Am-

South's motion to stay the underlying action pending arbitration is granted.[4]

---

4. The All Writs Act, 28 U.S.C. § 1651, provides that The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.