IN THE SUPREME COURT OF TEXAS









IN THE SUPREME COURT OF TEXAS

 

════════════

No. 07-0665

════════════

 

In re Morgan Stanley &
Co., Inc.,

successor to Morgan Stanley
DW, Inc., Relator

 

 

════════════════════════════════════════════════════

On Petition for Writ of Mandamus

════════════════════════════════════════════════════

 

 

Argued October 15,
2008

 

 

            Justice Hecht,
dissenting.

 

 

            Before a court can compel
arbitration under the Federal Arbitration Act,1
it must be “satisfied that the making of the agreement for arbitration
. . . is not in issue”.2 A challenge to
the validity of a contract containing an arbitration provision does not put the
making of the arbitration provision itself in issue; “as a matter of
substantive federal arbitration law, an arbitration provision is severable from
the remainder of the contract.”3 A challenge to the validity of the
arbitration provision itself is for the court to decide; but “when parties
agree to arbitrate all disputes arising under their contract, questions
concerning the validity of the entire contract are to be resolved by the
arbitrator in the first instance, not by a federal or state court.”4
Thus for example, whether the contract was fraudulently induced,5 or whether it is usurious and therefore
illegal,6 are issues for arbitration.

            But what if the challenge to the
contract is that it never came into being? Since “arbitration is a matter of
contract”,7 the issue must
be one for the court to decide. Otherwise, an arbitrator would be put in the
position of deciding whether he was authorized to decide the parties’ dispute,
concluding either that he was not authorized, a logical circularity, or that he
was, and raising himself by his own bootstraps.8
Thus, whether a person is bound by a contract he never signed is an issue for
the court.9 So, too, would seem to be issues whether
a person’s signature on a contract was forged,10
whether a person’s agent was authorized to sign,11
and whether an offer was withdrawn before a contract was signed.12

            The issue whether a party who
executed a contract lacked the mental capacity to do so is different. The rule
in Texas13 and most other jurisdictions14
is that the contract exists and can be ratified or avoided. That distinguishes
the issue of capacity from issues of signature or authorization. A person who
did not sign a contract or authorize its execution cannot enforce it; a person
who lacks mental capacity to sign it can. Thus, it seems to me, lack of
capacity is closer to fraudulent inducement than to lack of signature or
authorization and therefore an issue for the arbitrator rather than the judge.
The issue is not “the making of the agreement”; an agreement with a person
lacking capacity exists — it happened. Rather, the issue is whether the
agreement is valid and enforceable.

            The Court reaches the opposite
conclusion for two reasons, neither of which is compelling. First, the Court
notes that the Supreme Court, in a footnote distinguishing “[t]he issue of the
contract’s validity . . . from the issue whether any agreement
. . . was ever concluded”, listed four cases that had been cited to
it involving forgery, authorization, and mental capacity.15
But the Supreme Court expressed no opinion on any of these issues and did not
note the important difference under some states’ laws that mental incapacity
does not preclude an agreement. I think the Court overreads
the footnote, though of course, one cannot be sure. As Professor Ware has
observed:

 

Incapacity has long been a defense to the enforcement of a
contract formed by a minor or mentally incompetent person. Such incapacity does
not prevent the formation of a contract. So under the Supreme Court’s
distinction between a contract’s formation (“whether any agreement
. . . was ever concluded”) and defenses to enforcement (“the
contract’s validity”), incapacity plainly falls in the latter category and thus
should be resolved by arbitrators rather than courts. Yet the Supreme Court in Buckeye
grouped incapacity together with lack of assent and agency, both of which fall
into the former category (formation) and both of which, First Options
held, are resolved by courts rather than arbitrators. So it is possible that —
when presented with an incapacity case — the Court will continue to group
incapacity with lack of assent and agency and treat them all as questions for
courts, rather than arbitrators . . . .
Time will tell.16

 

            Second, as between the two cases on
the issue before us, the Tenth Circuit’s decision in Spahr v. Secco,17
and the Fifth Circuit’s decision in Primerica Life Ins. Co. v. Brown,18
the Court picks Spahr because the Fifth Circuit reached “a decidedly
different result” in Will-Drill Resources, Inc. v. Samson Resources Co.19
and Primerica has been criticized for misapplying the separability doctrine. But Will-Drill repeatedly
cites Primerica and discusses it approvingly,20
and the results in the two cases are entirely consistent. Primerica holds that
the issue whether a contract, though made, is invalid is for the arbitrator; Will-Drill
holds that the issue whether a contract was ever made is for the court. And
even if Primerica was mistaken in concluding that capacity was an issue
for arbitration simply because it was a challenge to a contract as a whole, that does not mean that the result was incorrect.
Again, Professor Ware summarizes:

 

[C]ourts would hear questions about
mutual assent, consideration, and authority to assent on behalf of others,
while sending to arbitrators questions about misrepresentation (fraud in the
inducement), mistake, duress, undue influence, incapacity, unconscionability,
impracticability, frustration of purpose, the statute of frauds, the statute of
limitations, illegality (or “public policy”), and expiration or termination.
However, these latter issues are sent to the arbitrator only if they are
challenges to the container contract as a whole; if they are “directed to the
arbitration clause itself,” then they are heard by courts.21

 

            Apart from the merits of the issue,
there is another reason to hold that mental incapacity is for the arbitrator:
the Fifth Circuit has done so. This Court has emphasized in the past that “it
is important for federal and state law to be as consistent as possible in
[applying the FAA], because federal and state courts have concurrent
jurisdiction to enforce the FAA.”22 Federal
courts in Texas must follow the Fifth Circuit, and state courts must follow
this Court. After today, whether an issue of mental capacity is for the court
or arbitrator in the first instance will depend on whether arbitration is
sought in state or federal court. Today’s decision encourages the
forum-shopping the Court has tried hard to avoid.

            As Justice
Brister points out, the matter may end up being a small one. Helen
Taylor’s guardian initially sued for breach of her contract with Morgan Stanley,
then dropped that claim when he realized he could not stand on the contract and
disavow the arbitration provision at the same time. The guardian now sues
Morgan Stanley for breach of fiduciary duty arising out of the relationship
between Taylor and Morgan Stanley, for recommending unsuitable transactions in
violation of state securities laws, and for negligence. But the relationship
between Taylor and Morgan Stanley was created and defined by their contract. If
the guardian proves the contract was invalid, and Taylor and Morgan Stanley
were simply strangers, it is not clear what duty Morgan Stanley owed or
breached. The Court goes out of its way to work the guardian through the
problems he has made for himself,23
but in repudiating any contract to avoid arbitration, he may well have cut off
his arbitration nose to spite his litigation face.

            I respectfully dissent.

 

_________________________

                                                                        Nathan L. Hecht

                                                                        Justice

Opinion delivered: July 3, 2009














[1] 9 U.S.C. §§ 1-16.





[2] Id. § 4
(“The court shall hear the parties, and upon being satisfied that the making of
the agreement for arbitration or the failure to comply therewith is not in
issue, the court shall make an order directing the parties to proceed to
arbitration in accordance with the terms of the agreement.”).





[3] Buckeye Check Cashing, Inc. v. Cardegna, 546
U.S. 440, 445-446 (2006).





[4] Preston v. Ferrer, 552 U.S. ___, ___ (2008).





[5] Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-404 (1967).





[6] Buckeye, 546 U.S. at 446.





[7] Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (“This court has determined
that ‘arbitration is a matter of contract and a party cannot be required to
submit to arbitration any dispute which he has not agreed so to submit.’”
(quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,
363 U.S. 574, 582 (1960))).





[8] Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 219 (5th Cir. 2003) (“[W]here the very
existence of an agreement is challenged, ordering arbitration could result in
an arbitrator deciding that no agreement was ever formed. Such
an outcome would be a statement that the arbitrator never had any
authority to decide the issue.”); Sphere Drake Ins. Ltd. v.
All Am. Ins. Co., 256 F.3d 587, 591 (7th Cir. 2001) (“[A]s arbitration
depends on a valid contract an argument that the contract does not exist can’t
logically be resolved by the arbitrator (unless the parties agree to arbitrate
this issue after the dispute arises).”).





[9] First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).





[10] Chastain v. Robinson-Humphrey
Co., 957 F.2d 851, 855 (11th Cir.
1992).





[11]
Sphere Drake, 256 F.3d at 591.





[12]
Will-Drill, 352 F.3d at 219.





[13]
See
Neill v. Pure Oil Co., 101 S.W.2d 402, 404 (Tex. Civ.
App.–Dallas 1937, writ ref’d) (“It is the settled law
in this state, we think, that a deed executed by a person of unsound mind is
not void but voidable. Hence, as a voidable deed, it effectually accomplishes the thing sought
to be accomplished, until set aside in a suit for rescission or cancellation.”
(citations omitted)).





[14]
53 Am. Jur. 2d Mentally Impaired Persons § 150
(2006); 17A C.J.S. Contracts § 145 (1999); 5 Samuel Williston & Richard A. Lord, A
Treatise on the Law of Contracts § 10:3 (4th ed. 1993); Restatement (Second) of Contracts
§ 15 (1981); 1 E. Allan Farnsworth,
Contracts § 4.7 (3d ed. 2004).





[15]
Buckeye Check Cashing, Inc. v. Cardegna, 546
U.S. 440, 444 n.1 (2006) (“The issue of the contract’s validity is different
from the issue whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses
only the former, and does not speak to the issue decided in the cases cited by
respondents (and by the Florida Supreme Court), which hold that it is for
courts to decide whether the alleged obligor ever signed the contract, Chastain
v. Robinson-Humphrey Co., 957 F.2d 851 (C.A.11 1992), whether the signor
lacked authority to

commit the alleged principal, Sandvik
AB v. Advent Int’l Corp., 220 F.3d 99 (C.A.3 2000); Sphere Drake Ins.
Ltd. v. All American Ins. Co., 256 F.3d 587 (C.A.7 2001), and whether the
signor lacked the mental capacity to assent, Spahr v. Secco,
330 F.3d 1266 (C.A.10 2003).”).





[16]
Stephen J. Ware, Arbitration Law’s Separability Doctrine after Buckeye Check Cashing, Inc.
v. Cardegna, 8 Nev.
L.J. 107, 118-119 (2007)
(footnotes omitted).





[17] 330 F.3d 1266 (10th Cir. 2003).





[18] 304 F.3d 469, 471 (5th Cir. 2002).





[19] 352 F.3d 211, 219 (5th Cir. 2003).





[20]
Id.
at 214-215, 218 n.41-42.





[21] Ware, supra note 16, at
115-116 (footnotes omitted).





[22]
In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 739 (Tex. 2005).





[23] Ante at ___.