# Third District Court of Appeal

## State of Florida

Opinion filed February 10, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-0969
Lower Tribunal No. 19-10064
_____

**Herbert Jean,**
Appellant,

vs.

**Bayview Loan Servicing, LLC, etc., et al.,**
Appellees.

An appeal from a nonfinal order from the Circuit Court for Miami-Dade County, Carlos Guzman, Judge.

Anthony V. Falzon, P.A., and Anthony V. Falzon, for appellant.

Greenberg Traurig P.A., and Paul B. Ranis (Fort Lauderdale), for appellees.

Before MILLER, GORDO, and BOKOR, JJ.

MILLER, J.

Appellant, Herbert Jean, challenges a nonfinal order compelling arbitration in his lawsuit against appellees, Bayview Loan Servicing, LLC and Bayview Asset Management, LLC (collectively "Bayview"). We have jurisdiction. Fla. R. Civ. P. 9.130(a)(3)(C)(iv). Concluding that "disputed factual issues regarding the making of the arbitration agreement" preclude the summary procedure engaged by the court below, we reverse and remand for an evidentiary hearing. Am. Mgmt. Servs., Inc. v. Merced, 186 So. 3d 612, 614 (Fla. 4th DCA 2016) (citations omitted).

## BACKGROUND

Jean filed suit against his employer, Bayview, under the Fair Labor Standards Act, seeking damages for unpaid overtime compensation. See 29 U.S.C. § 201 et seq. Bayview terminated his employment and, relying upon its "Dispute Resolution and Arbitration Policy," subjecting all employment "disputes, claims or controversies" to arbitration, moved to compel arbitration. Appended to its motion were affidavits alleging all employees, including Jean, were required to electronically sign the Policy as a condition of continued employment. Although Bayview did not produce a signed copy, it filed computer screenshots purportedly demonstrating Jean "necessarily" received, viewed, and electronically acknowledged the Policy.

2

Jean opposed the motion with a counter-affidavit denying he had ever received, reviewed, or signed the Policy. He further contended all required employment documents were manually signed, and suggested that, because Bayview was capable of technologically overriding his assigned credentials, the electronic acknowledgment was either forged or falsified. Finally, Jean alleged the documents submitted by Bayview demonstrated an internal inconsistency, calling into question whether they actually bore an electronic acknowledgment.

He then requested an evidentiary hearing to resolve the competing factual issues surrounding the formation of the agreement. The lower tribunal denied the request, found the parties were bound by the Policy, and ordered the matter to arbitration. The instant appeal ensued.

## LEGAL ANALYSIS

"Arbitration is strictly 'a matter of consent,' and thus 'is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.'" Granite Rock Co. v. Int'l Brotherhood of Teamsters, 561 U.S. 287, 299, 130 S. Ct. 2847, 2857, 177 L. Ed. 2d 567 (2010) (citations omitted). Hence, the threshold issue in determining the propriety of a motion to compel arbitration is whether the parties assented to arbitration. H.

3

Michael Muniz, Compelling Arbitration of Disputes: The Florida v. Federal Law Quagmire, 80-DEC Fla. B.J. 31, 31 (2006).

In accord with these principles, the law has long recognized a distinction between challenges to the formation, or very existence, of an arbitration agreement, which must be resolved by the court, and challenges to the continuing validity or scope of such an agreement, which are arbitrable. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444, 126 S. Ct. 1204, 1208, 163 L. Ed. 2d 1038 (2006); see also § 682.02(2), Fla. Stat.; Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 26 (2d Cir. 2002) ("It is well settled that a court may not compel arbitration until it has resolved 'the question of the very existence' of the contract embodying the arbitration clause.") (citation omitted).

In formation challenges, the court generally acts as a gatekeeper, charged with determining the "existence of a legally enforceable assent to submit to arbitration." Alan Scott Rau, Everything You Really Need to Know About "Separability" in Seventeen Simple Propositions, 14 Am. Rev. Int'l Arb. 1, 17 (2003); see also § 682.02, Fla. Stat.; AT & T Techs. Inc. v. Commc'ns Workers, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not

the arbitrator.") (citation omitted).  This is because prematurely ordering arbitration before resolving whether an agreement exists, "could result in an arbitrator deciding no agreement was ever formed."  Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 219 (5th Cir. 2003).  Logically, such an outcome could not stand, as it "would be a statement that the arbitrator *never* had authority to decide the issue." Id.; see also United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S. Ct. 1347, 1353, 4 L. Ed. 2d 1409 (1960) ("For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit.").

Conversely, in challenges falling within the latter category, the parties have formed a binding agreement.  Consequently, issues surrounding the continuing validity, application, scope, and enforceability are most-often delegated to the arbitrator for resolution.  See, e.g., A T & T Techs., Inc., 475 U.S. at 648-49, 106 S. Ct. at 1418 ("[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration.") (citation omitted); Jones v. Waffle House, Inc., 866 F.3d 1257, 1267 (11th Cir. 2017) (Parties have manifested the clear and unmistakable "requisite intent [to] delegat[e] [to arbitration gateway issues when the] provision at issue commit[s] to arbitration 'any issue

5

concerning the validity, enforceability, or scope of this loan or the Arbitration agreement,' or, 'any and all disputes arising out of or in connection with this Agreement, including any question regarding its existence, validity, or termination,' or, finally, 'any issue regarding whether a particular dispute or controversy is . . . subject to arbitration.'") (fifth alteration in original) (citations omitted); Price v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers, 457 F.2d 605, 610 (3d Cir. 1972) ("A court will defer to arbitrators or committees when they are exercising their delegated power to decide unforeseen or unresolved problems arising out of gaps or content in the contract.").

Here, Jean challenged the formation of the arbitration agreement. Thus, the trial court was charged with determining the threshold issue of whether an agreement to arbitrate existed.

Ordinarily, the court would have been well-within its discretion to summarily declare Jean assented to arbitration. See § 682.03(1)(b), Fla. Stat. However, here, in the absence of credibility determinations derived from live testimony, the disputed factual claims surrounding the making of the agreement were incapable of any informed resolution. Am. Mgmt. Servs., Inc., 186 So. 3d at 614 ("When a party seeks to compel arbitration and the other party opposed the motion, the trial court must first determine

6

whether there are disputed factual issues regarding the making of the arbitration agreement . . . If the court determines that there is a substantial disputed issue, then it must set an expedited evidentiary hearing.") (citations omitted). Accordingly, by failing to conduct an evidentiary hearing, we conclude the trial court exceeded its discretion in finding a valid contract existed and we reverse and remand for such a hearing on the merits of the respective claims of the parties.

Reversed and remanded.